A99A2146. VAUGHN v. PROTECTIVE INSURANCE COMPANY et al.
(532 SE2d 159)

POPE, Presiding Judge.
The jury returned a defense verdict in this tragic case arising out of an automobile accident that killed James Christopher Vaughn. His mother, as administrator of Vaughn's estate, appeals the result on the grounds that the court should not have instructed the jury on assumption of the risk and that the trial court improperly refused to allow Vaughn to question her expert witness about his prior employ-

ment by defense counsel. Because the facts did not raise the issue of assumption of the risk, we reverse.

On July 14, 1993, James and others were riding in the back of a flatbed farm truck that had faulty brakes when the truck was approaching a stop sign at an intersection with Highway 257. At the same time, Norman L. Austin was approaching the same intersection on Highway 257 driving a fully loaded tractor-trailer, weighing over 37 tons. The farm truck was unable to stop. When he was approximately 300 feet from the intersection, Austin, who did not know the farm truck was facing a stop sign, saw the truck entering the intersection, tried to stop, and left skid marks beginning approximately 45 feet from the point of impact — which means that because the braking tires are on the back of the tractor, the front of the tractor was only 30 feet from the farm truck when the skid began. Austin was unable to stop or steer around the truck, and his vehicle demolished the back end of the farm truck killing James and another person who was riding in the back.[1] The tractor came to a stop over 100 feet past the intersection, and the trailer went 86 feet farther than that.

Vaughn, on behalf of her son, brought suit against Austin, his employer, James Motor Company, and its insurance company, Protective Insurance Company. At trial there were issues of fact about whether Austin was driving within the 55-mph speed limit and about whether he negligently tried to beat the farm truck through the intersection. Austin estimated his speed at between 50 and 55 mph, but Vaughn's accident reconstruction expert, Thomas Langley, testified that Austin was traveling between 66 and 69 mph at the beginning of the skid mark. Also, Austin had his truck in either the eighth or ninth gear (out of ten) at the time of the accident, he had not geared down at all after seeing the farm truck, and he admitted that he initially turned in the direction the farm truck was going because his "[f]irst instinct is to beat it."

1. The court charged the jury on assumption of risk as follows:

> When a person knowingly and voluntarily takes a risk of physical injury, the danger of which is so obvious that the act of taking such risk in and of itself amounts to failure to exercise ordinary care for one's own safety, that person cannot hold another liable for the injuries proximately caused by such action, even though the injuries may in part be attributed to the negligence of other persons.

Vaughn contends that the charge should not have been given

---

[1] The occupants of the cab of the truck received only minor injuries.

because the principle is not applicable to this case. The defendants disagree and contend she waived this objection. Vaughn agreed to the charge during the charge conference and failed to object after the court charged the jury for the first time. But the jury requested that it be fully charged a second time. After the second charge the court called for objections to the recharge, and Vaughn objected to the charge on assumption of risk on the ground that it was not adjusted to the evidence and that it was not applicable to the case.

One waives any defect in the charge by failing to object to an instruction before the jury returns its verdict. OCGA § 5-5-24 (a); *Pope v. Goodgame*, 223 Ga. App. 672, 675 (3) (c) (478 SE2d 636) (1996); *Bryant v. Housing Auth. &c. of Atlanta*, 121 Ga. App. 32 (2) (172 SE2d 439) (1970). But as shown, Vaughn objected before the verdict. See *Brown v. Sims*, 174 Ga. App. 243, 244 (2) (329 SE2d 523) (1985) (physical precedent) (objection after charge sufficient even though there was no objection at charge conference).

The purpose of OCGA § 5-5-24 (a) is to allow correction of errors in the charge when there is still time to do so. *Continental Cas. Co. v. Union Camp Corp.*, 230 Ga. 8, 16 (2) (195 SE2d 417) (1973) (decided under former Code Ann. § 70-207). This was the case here. The court could have withdrawn the charge and instructed the jury to no longer consider assumption of the risk, or it could have given revised instructions sufficient to clarify the law applicable to the case. Cf. *Jones v. State*, 246 Ga. 109, 111-112 (5) (269 SE2d 6) (1980) (no merit to claim of incorrect charge where it has been called to jury's attention, withdrawn from them, and a correct charge given).

2. The court's charge on assumption of the risk was not appropriate because James did not assume the risk of Austin's alleged negligent driving.

"In Georgia, a defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks." (Citation omitted.) *Vaughn v. Pleasent*, 266 Ga. 862, 864 (1) (471 SE2d 866) (1996).

A charge on assumption of the risk is appropriate where there is evidence that the plaintiff had subjective knowledge of "the specific, particular risk of harm associated with the activity or condition that proximately causes injury," yet proceeded anyway. *Vaughn*, 266 Ga. at 864 (1). "The knowledge requirement does not refer to a plaintiff's comprehension of general, non-specific risks that might be associated with such conditions or activities." Id. See also *Trustees of Trinity College v. Ferris*, 228 Ga. App. 476, 479 (3) (491 SE2d 909) (1997). Also, in Georgia assumption of the risk is based in part on the reasoning that, "the plaintiff, in advance, has given his consent to

relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone." (Citation and emphasis omitted.) *Vaughn*, 266 Ga. at 864 (1).

In this case the plaintiff knowingly or unknowingly faced at least three risks: (1) the risk of riding in the back of a farm truck; (2) the risk of the farm truck not stopping because of faulty brakes; and (3) the risk of Austin's allegedly negligent speed. The facts in this case suggest that all three risks may have contributed to James' death. But Vaughn's suit against the defendants is premised on the allegation that Austin's alleged negligence was the proximate cause of James' death.

James, as a normal adult in this day and age,[2] must be held to have understood the risks associated with riding in the back of a flat-bed truck. The risks include being thrown out of the truck or being injured in an accident to a greater degree than riding in a seat properly buckled up.[3] Those risks do not include being run over by a tractor-trailer unable to stop in time because it was traveling at excessive speed. James did not consent to that. He did not consent to relieving Austin of his duty to drive carefully. See *Vaughn*, 266 Ga. at 865 (2); *Jimenez v. Morgan Drive Away*, 238 Ga. App. 638, 640 (1) (519 SE2d 722) (1999) ("knowledge of the dangers of driving a truck on the highway when the clutch is malfunctioning and parking a disabled truck in the emergency lane is not sufficient to establish knowledge that a vehicle would come into the emergency lane and strike the truck").

Similarly, assuming without deciding that there may be slight evidence that James was aware the brakes were faulty, that knowledge does not mean that he assumed the risk of Austin's negligence. The risk of faulty brakes includes running into things, losing control of a vehicle, and running stop signs. But again, it does not include the risk of being hit by a vehicle because that vehicle was being operated in a negligent manner.

In *Beringause v. Fogleman Truck Lines*, 200 Ga. App. 822, 824 (4) (409 SE2d 524) (1991), this Court held that it was error to have charged on assumption of the risk when an officer was involved in a head-on collision while he was traveling, with emergency lights flashing, as part of an official convoy that was exceeding the speed limit and straddling the road's median. We held that the officer

---

[2] He was 25 years old at the time of the accident and had a high school diploma.

[3] The issue of whether riding in the back of an open truck is admissible only for the purpose of damages is not before us. Compare *Sapp v. Johnson*, 184 Ga. App. 603, 606 (3) (362 SE2d 82) (1987).

would have to have been aware of the actual risk in order for assumption of the risk to apply:

> In order for [the officer] to have assumed the risk of being struck by [the] truck, there must be evidence that, after the truck had swerved into his lane of traffic, he had then made a conscious and voluntary decision to proceed and risk a head-on collision.

(Emphasis omitted.) Id. at 824 (4). Compare *Norman v. Williams*, 220 Ga. App. 367 (1) (469 SE2d 366) (1996).

In this case, a charge on assumption of the risk would have been appropriate only if there was some evidence that James saw the speeding tractor-trailer and *then* chose to stay in the truck rather than jump to safety, and then, only if he had time to do so. See *Beringause*, 200 Ga. App. at 824 (4); *Brown*, 174 Ga. App. at 245-246 (3). Although James may have seen the tractor coming toward him, the defendants do not contend he had time to jump off the truck or otherwise avoid injury at that point in time. Thus, it cannot be said that James assumed that risk. For these reasons, it was error to give the charge on assumption of the risk in this case.

3. We next address whether the error was harmful:

> " '(W)hen an error in the charge of the court is shown to exist, it is presumed to be prejudicial and harmful, and this court will so hold unless it appears from the entire record that the error is harmless.' (Cit.)" *Jones v. Davis*, 183 Ga. App. 401, 402 (1) (359 SE2d 187) (1987).

*Foskey v. Foskey*, 257 Ga. 736, 737 (2) (363 SE2d 547) (1988).

Based on the charge as a whole, including the charge on assumption of the risk, the jury could easily have believed that if they found that James was negligent because he chose to ride in the back of an open truck, Vaughn could not recover as a matter of law. Therefore a new trial is required.

4. We will address the remaining enumeration of error because the issue is likely to recur on retrial.

Prior to trial, the court granted the defendants' motion in limine thereby prohibiting reference to the fact that their counsel, and his former firm or clients, had employed Langley in the past, in other cases, as an accident reconstruction expert. During the trial, defense counsel objected to Langley testifying as an expert and, in so doing, attacked Langley's qualifications in front of the jury. The court ruled over the defense objection that Langley was qualified as an expert in the area of accident reconstruction.

While questioning Langley on direct, Vaughn's attorney sought

to have the court reconsider its ruling on the motion so that he could rehabilitate the witness by asking about his past employment by defense counsel. The court ruled that Vaughn could show that Langley had been hired by both plaintiffs and defendants generally but could not ask about prior employment by this defense counsel. Later, Vaughn made the same request again and eventually proffered that defense counsel's former law firm or its clients had employed Langley "probably 12 to 15 times," in similar cases. The court denied the request.

The trial court has wide discretion in determining relevancy of questions asked on voir dire of a proposed expert witness. *Williams v. State*, 171 Ga. App. 807, 810 (4) (321 SE2d 386) (1984). Evidence is relevant if it either directly or indirectly relates to a question being tried. OCGA § 24-2-1. The issue being tried during voir dire of an expert is whether his or her background, including education, training, special knowledge, skill or experience, qualifies him or her to render an opinion within the scope of a particular expertise and whether that particular expertise is relevant to an issue in the case.[4] And, a party is allowed to impeach or rehabilitate an expert witness' credibility. See *Dept. of Transp. v. Adams*, 193 Ga. App. 866 (1) (389 SE2d 343) (1989).

But the type of information that Vaughn attempted to elicit was not proper rehabilitation evidence and was not relevant to the decision of whether he was a competent expert. See *Krause v. Vance*, 207 Ga. App. 615, 618 (5) (428 SE2d 595) (1993). In *Krause*, a party sought to introduce evidence that the judges in two other lawsuits disagreed with his opponent's witness' testimony in those cases. Id. We held that the evidence "was incompetent for impeachment purposes because it did not contradict the witness' testimony in the instant case." Id. It was irrelevant.

*Krause* is instructive for this case. Vaughn sought to bolster Langley's credibility by raising the inference that defense counsel universally thought Langley was a competent expert witness. But that evidence is irrelevant. If defense counsel hired Langley in another case, his duty there was to find the best available expert willing to offer an opinion favorable to his client's case. The fact that he used Langley in other suits does not show what defense counsel thought of him. Defense counsel's obligation to his client in this case

---

[4] See OCGA § 24-9-67; *Smith v. State*, 210 Ga. App. 451, 452 (3) (436 SE2d 562) (1993) ("one whose habits and profession endow him or her with a particular skill in forming an opinion on the subject matter in inquiry"); *Goodman v. Lipman*, 197 Ga. App. 631, 633 (2) (399 SE2d 255) (1990) ("education, training or experience in the pertinent field of study"); *Johnson v. State*, 266 Ga. 624, 627 (2) (469 SE2d 152) (1996) (expert's testimony must be relevant to an issue in the case).

is to zealously guard against incompetent expert opinion testimony being used against his client. It could be that exactly because defense counsel used Langley in another matter, he knows the weaknesses of Langley's qualifications as an expert.

Moreover, the testimony essentially would make defense counsel a witness. His true feelings regarding the expert could not be explored without doing so. Finally, defense counsel's argument that Langley was not competent is not evidence. Therefore the fact that defense counsel may have hired Langley in other cases does not contradict any evidence in the present case. See *Krause*, 207 Ga. App. 618 (5).

In short, the evidence is not admissible for the purpose of attempting to rehabilitate or bolster Langley's credibility. The court did not abuse its discretion in prohibiting questioning on this point.

Cases where one party hired an expert previously employed by the opposing *party* are not on point. See, e.g., *Dept. of Transp. v. Cochran*, 160 Ga. App. 583 (287 SE2d 599) (1981); *DeKalb County v. Queen*, 135 Ga. App. 307 (217 SE2d 624) (1975); *Logan v. Chatham County*, 113 Ga. App. 491 (148 SE2d 471) (1966). *Canada v. Shropshire*, 232 Ga. App. 341 (501 SE2d 860) (1998) is also not on point. The issue in that case was the past use by the plaintiff himself of the same expert and attorney arising out of three similar accidents.

*Judgment reversed. Smith and Miller, JJ., concur.*

DECIDED MARCH 24, 2000 —

*Orr & Edwards, W. Fred Orr II, Gambrell & Stolz, Irwin W. Stolz, Jr.,* for appellant.

*Gray, Hedrick & Edenfield, William E. Gray II, Linda M. Fitzgerald,* for appellees.