A04A1390. PRESTON et al. v. SABETAZM et al.
(604 SE2d 224)

PHIPPS, Judge.

Robert Preston died after his motorcycle hit a median on Johnson Ferry Road in Cobb County. His parents, Richard and Johnnie Preston, brought a wrongful death action against Parham Sabetazm, alleging that he negligently and recklessly "drove his vehicle in such manner as to cause [Preston's] motorcycle . . . to collide with [the] median. . . ." Sabetazm claimed, among other things, that he and Preston were racing at the time of the collision, and he raised the affirmative defense of assumption of the risk.[1] The case was tried before a jury, which returned a defense verdict. Preston's parents appeal, asserting that the trial court erred by charging the jury on assumption of the risk and by failing to give two charges they requested. Finding no error, we affirm.

1. At trial, Sabetazm testified that as he was driving his twin turbo Mitsubishi 3000 GT sports car south along Johnson Ferry Road, Preston's motorcycle came up beside him. Preston, whom Sabetazm did not know, "was putting out his hand . . . as if he was trying to reach for [Sabetazm's] car." Preston passed Sabetazm, then Sabetazm passed Preston at a speed of approximately 80 mph.

---

[11] See *Albee v. Kransnoff*, 255 Ga. App. 738, 744 (7) (566 SE2d 455) (2002).

[1] Preston's parents also sued Sabetazm's parents, alleging that they were jointly and severally liable under the family purpose doctrine because they had supplied their son with the car he was driving at the time of the incident. We will refer to Sabetazm and his parents collectively as Sabetazm.

According to Sabetazm, as the vehicles approached a curve where Johnson Ferry Road intersected Wellington Drive, Sabetazm was driving in the right lane and Preston was in the left lane. After Sabetazm passed the intersection, he looked in his rearview mirror and saw "the aftermath" of Preston's collision with the median.

Sabetazm later told the police that he and Preston had been "playing around." At trial, Sabetazm stated, "I was trying to get away and he was trying to catch up."

Timothy Kennedy testified that he saw the collision as he was driving north on Johnson Ferry Road. According to Kennedy, the motorcycle hit the median because the car moved into its lane of travel and "cut [it] off." Kennedy also testified that "[t]hese guys [were] racing."

Henry Bohn testified that the motorcycle and the Mitsubishi passed him shortly before the collision, as he was driving south on Johnson Ferry Road. Bohn testified that he was driving at the speed limit "and they passed me like I was standing still." According to Bohn, the motorcycle was "tailgating" the car and the vehicles appeared to be racing.

At the conclusion of the evidence, the court gave the jury the following assumption of the risk charge:

> When a person knowingly and voluntarily takes a risk of personal injury, the danger of which is so obvious that the act of taking such risk in and of itself amounts to a failure to exercise ordinary care for one's own safety, that person cannot hold another liable for injuries proximately caused by such action, even though the injuries may be, in part, attributable to the negligence of the other person.

Preston's parents argue that giving the charge was error because there was no evidence that their son assumed the risk that Sabetazm would swerve into his lane of travel. Sabetazm counters that the charge was warranted because there was evidence that he and Preston were racing when the collision occurred. We agree with Sabetazm.

"A trial court has a duty to charge the jury on the law applicable to issues which are supported by the evidence. If there is even slight evidence on a specific issue, however, it is not error for the court to charge the jury on the law related to that issue."[2]

---

[2] (Citations and punctuation omitted.) *Thrash v. Rahn*, 249 Ga. App. 351-352 (1) (547 SE2d 694) (2001).

The affirmative defense of assumption of the risk bars a plaintiff from recovering on a negligence claim if it is established that he without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not. In Georgia, a defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks. . . . In its simplest and primary sense, assumption of the risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone.[3]

In *Roberts v. King*,[4] the parents of a passenger in a car that was racing with another car sued the drivers of both cars for the wrongful death of their son, who died when the car in which he was riding lost control on a curve. We held that the decedent had voluntarily assumed the risk of hazards associated with racing. We wrote: "The law cannot condone any kind of illegal racing on the public highways of the State and we hold all persons strictly responsible for their participation in drag racing, whether knowing the consequences attendant thereon or not. . . ."[5] Thus, assumption of the risk is a defense to a claim of injury arising from knowing participation in a race on a public road.

OCGA § 40-6-186 (a) (2) defines racing, in relevant part, as "the use of one or more vehicles in an attempt to outgain, outdistance, or prevent another vehicle from passing." Whether drivers engaged in racing is a question for the jury.[6] Because there was evidence from which the jury could have concluded that Preston and Sabetazm were racing when Preston collided with the median, the trial court did not err in charging the jury on assumption of the risk.

Preston's parents contend that the fact that their son was speeding did not relieve Sabetazm of the duty not to veer into his lane of travel. They concede that Preston assumed the risk of injury from his own actions, but they maintain that he did not assume the risk of injury from Sabetazm's negligence. But if Preston was engaged in a

---

[3] (Citations, punctuation and emphasis omitted.) *Vaughn v. Pleasent*, 266 Ga. 862, 864 (1) (471 SE2d 866) (1996).

[4] 102 Ga. App. 518 (116 SE2d 885) (1960).

[5] Id. at 522.

[6] See *Kilpatrick v. Foster*, 185 Ga. App. 453, 456 (2) (364 SE2d 588) (1987).

race with Sabetazm, then he assumed the risk of hazards associated with racing, including the risk that his racing partner would lose control on a curve and swerve into his lane. As we wrote in *Roberts v. King*:

> Under the evidence in this case the drivers . . . were guilty of wilful and wanton misconduct in racing on a public highway contrary to the laws of the State. . . . When one assumes the risk of the wilful and wanton misconduct of another a recovery on the basis of such misconduct is precluded and the law will not undertake to divide the wantonness into degrees or fractions of degrees to ascertain whether the death or injury resulting was fully realized and appreciated by the one so assuming the risks. The law will hold such a one to have assumed whatever risks develop in the process of the activity engaged in.[7]

Preston's parents also cite *Vaughn v. Pleasent*[8] and *Beringause v. Fogleman Truck Lines*,[9] in which jury charges on assumption of the risk were given in error. Those cases are inapposite. In *Vaughn*, a police officer responding to an emergency call was injured when a truck turned in front of him without signaling as he sped down the wrong side of the road. In *Beringause*, a police officer who was driving his car in an official convoy died when an oncoming truck swerved into his lane of travel. In both cases, we held that although the officers may have been engaging in potentially risky behavior, they had not consented to relieve other drivers of the duty to drive with due care. "On the contrary, by [their] use of flashing emergency lights, [they were] insisting that the other drivers use care to watch for [them] and avoid hitting [their] vehicle[s]. . . ."[10] In this case, if Preston was racing Sabetazm, he was not insisting that Sabetazm act with due care toward him, and he did relieve Sabetazm of that duty.

2. Preston's parents argue that the trial court erred by refusing to give two jury charges that they requested in writing. A refusal to give a requested jury charge is not error unless the request is entirely correct and accurate; is adjusted to the pleadings, law, and evidence; and is not otherwise covered in the general charge.[11] We find no error here.

---

[7] 102 Ga. App. at 523.

[8] Supra.

[9] 200 Ga. App. 822 (409 SE2d 524) (1991), disapproved on other grounds, *Robinson v. Star Gas of Hawkinsville*, 269 Ga. 102, 104 (1) (498 SE2d 524) (1998).

[10] Id. at 823 (4); *Vaughn*, 266 Ga. at 865 (1) (quoting *Beringause*).

[11] *Hefner v. Maiorana*, 259 Ga. App. 176, 177 (1) (576 SE2d 580) (2003).

(a) The first requested charge was as follows:

The duty to act with reasonable care towards another remains even where the latter may be acting in violation of the law. Therefore, the fact that Plaintiff was exceeding the speed limit, does not relieve the Defendant of his duty to act with reasonable care towards Plaintiff.

Preston's parents have not shown that the request contains an entirely correct and accurate statement of law. Although they cite *Beringause v. Fogleman Truck Lines*,[12] we do not find the language in question there.

(b) Preston's parents also requested a charge that "[i]t is not necessary for a driver to actually collide with another to be 'involved in an accident.' " Again, they fail to show that the request is entirely correct and accurate. They cite OCGA § 40-6-270 and *Bellamy v. Edwards*,[13] but those authorities do not contain the requested language. In addition, they fail to show that the charge is adjusted to the evidence.

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED AUGUST 18, 2004 —
RECONSIDERATION DENIED SEPTEMBER 3, 2004 — 

*Vincent R. Lauria*, for appellants.
*Harper, Waldon & Craig, Thomas D. Harper, Daniel C. Prout, Jr.*, for appellees.

---

[12] Supra.
[13] 181 Ga. App. 887 (354 SE2d 434) (1987).