A04A2280. TAYLOR v. HOWREN.
(606 SE2d 74)

BLACKBURN, Presiding Judge.

In this action regarding personal injuries received after being thrown from a horse, Rodney Taylor appeals the trial court's grant of summary judgment to Gary Howren,[1] contending that the trial court erred by determining that: (1) Howren had immunity from Taylor's suit pursuant to the Georgia Equine Activities Act[2] and (2) Taylor assumed the risk of his injuries. For the reasons set forth below, we reverse.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[3] A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[4]

Viewed in this light, the record shows that, on July 16, 2000, Howren called Taylor and asked him to come to his farm to assist him in bandaging a wound on the leg of Precious, one of Howren's two horses. Howren requested Taylor's assistance because Taylor, who had assisted his uncle, Jimbo Biddy, in a horse and carriage business for a number of years, had some experience in caring for horses.

In order to treat Precious, whom he had previously ridden, Taylor applied a "twister" to the horse's mouth, a method used to distract a horse while its wounds were dressed. After Precious was bandaged, Taylor decided to ride a second unnamed horse that Howren had recently acquired at an auction. When Howren purchased the horse, he was instructed that it was "green broke," an equine term referring

---

[1] Howren was Taylor's father-in-law at the time of the accident.

[2] OCGA § 4-12-1.

[3] OCGA § 9-11-56 (c).

[4] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

to the fact that the horse had not been fully trained. Taylor contends that, prior to the time he attempted to ride the horse, Howren told him that it was a "good, rideable horse" when, in fact, the horse was actually "green broke" and dangerous to ride.

With the help of another person, Taylor placed a saddle on the unnamed horse and led it out into a pasture. Taylor then attempted to mount the horse, but, as he was doing so, the horse unexpectedly reared its head backward, striking Taylor in the left eye. The blow knocked Taylor unconscious, and, in the ensuing fall, he broke his neck, thereby rendering him paralyzed.

After his accident, Taylor brought suit against Howren for his injuries. In turn, Howren filed a motion for summary judgment, contending that Howren was immune from Taylor's action under the Equine Activities Act and Taylor had assumed the risk of his injuries. The trial court granted Howren's motion on both grounds, and Taylor now appeals.

1. Taylor contends that the trial court erred by finding that Howren was immune from suit pursuant to the Equine Activities Act. We must agree.

In passing the Equine Activities Act, the legislature explicitly set forth its underlying intent. OCGA § 4-12-1 states:

> The General Assembly recognizes that persons who partici-
> pate in equine activities . . . may incur injuries as a result of
> the risks involved in such activities. The General Assembly
> also finds that the state and its citizens derive numerous
> economic and personal benefits from such activities. The
> General Assembly finds, determines, and declares that this
> chapter is necessary for the immediate preservation of the
> public peace, health, and safety. It is, therefore, the intent of
> the General Assembly to encourage equine activities . . . by
> limiting the civil liability of those involved in such activities.

Our legislature then set forth the limits of such civil liability in OCGA § 4-12-3. This provision states, in relevant part:

> (a) Except as provided in subsection (b) of this Code
> section, an equine activity sponsor, an equine professional,
> . . . or any other person . . . shall not be liable for an injury to
> or the death of a participant resulting from the inherent
> risks of equine activities . . . and, except as provided in
> subsection (b) of this Code section, no participant or partici-
> pant's representative shall make any claim against, main-
> tain an action against, or recover from an equine activity
> sponsor, an equine professional, . . . or any other person for

injury, loss, damage, or death of the participant resulting from any of the inherent risks of equine activities. . . .

(b) Nothing in subsection (a) of this Code section shall prevent or limit the liability of an equine activity sponsor, an equine professional, . . . or any other person if the equine activity sponsor, equine professional, . . . or person: . . .

(1) (B) Provided the animal and failed to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity . . . and to safely manage *the particular animal* based on the participant's representations of his or her ability.

(Emphasis supplied.)

In this case, assuming Taylor's testimony to be true, as we must,[5] Howren was not entitled to immunity under the Equine Activities Act. According to Taylor, Howren told him that the horse was a "good, rideable" horse, despite Howren's knowledge that the horse was "green broke" and, to his knowledge, had never been ridden. It cannot be said that one who actively misrepresents the domesticity of a steed has taken prudent efforts to determine whether a proposed rider can safely manage the animal in question. To hold otherwise would immunize one who offers up a raging stallion in the guise of a gentle pony to an unknowing rider. Certainly, the legislature did not intend for the person providing the horse to have immunity in such an instance.

Accordingly, the trial court erred by granting summary judgment to Howren pursuant to the Equine Activities Act.

2. Taylor contends that the trial court erred by determining that he assumed the risk of his injuries. Again, we must agree.

"Assumption of risk assumes that the actor, without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not." (Punctuation omitted.) *Beringause v. Fogleman Truck Lines*.[6]

Accepting Taylor's version of events as true, he was told that the unnamed horse was a "good, rideable" horse when, in fact, it was "green broke" and dangerous to ride. Therefore, as Taylor was misled regarding the nature of the horse, he could not be expected to have full knowledge of the likely danger he faced in riding the horse. And, as a further result of this misleading information, it cannot be said that

---

[5] Other witnesses to the accident uniformly testified that Howren warned Taylor that the horse was "green broke" and explicitly told him not to ride the horse. This raises a question of credibility on this point which must ultimately be determined by the trier of fact.

[6] *Beringause v. Fogleman Truck Lines*, 200 Ga. App. 822, 823 (4) (409 SE2d 524) (1991).

Taylor exercised a free and knowing choice to engage in the dangerous act of riding a horse that had not been fully trained. For these reasons, Taylor cannot be found to have assumed the risk of his injuries as a matter of law.

In reaching this conclusion, we remain mindful of our decision in *Young v. Brandt*.[7] There, we stated:

> [I]t must be recognized . . . that passage of OCGA § 4-12-1 et seq.[, the Equine Activities Act,] has substantially changed the law relating to assumption of the risk of injury from engaging in equine activities. The General Assembly of this state has now recognized that as a matter of public policy those who engage in equine activities may incur injuries as a result of the well-known risks associated with those activities and has defined specifically those inherent risks in OCGA § 4-12-2 (7).[8] Thus, when injuries have arisen from risks identified in OCGA § 4-12-2 (7), in most cases, the plaintiff should be found to have assumed the risk, as a matter of law, even when defendants are not asserting the immunity granted under the Equine Activities Act.

This case, however, is an exception to this general rule as, here, there is a question of fact whether the provider of the horse misrepresented its nature to the rider.

*Judgment reversed. Barnes and Mikell, JJ., concur.*

DECIDED OCTOBER 12, 2004 —
RECONSIDERATION DENIED OCTOBER 29, 2004 — 

*William M. Akin*, for appellant.
*Hawkins & Parnell, William H. Major III*, for appellee.

---

[7] *Young v. Brandt*, 225 Ga. App. 889, 892 (3) (485 SE2d 519) (1997).

[8] Such inherent dangers include: (1) "[t]he propensity of the animal to behave in ways that may result in injury, harm, or death to persons on or around them"; and (2) "[t]he unpredictability of the animal's reaction to such things as sounds, sudden movement, and unfamiliar objects, persons, or other animals." OCGA § 4-12-2 (7) (A), (B).