### A09A1243. TEEMS et al. v. BATES.
(684 SE2d 662)

BERNES, Judge.

Janna Teems fell and was severely injured while riding on the top of a moving car driven by her teenage friend, Matthew Bates. Teems and her parents subsequently brought this negligence action

---

against Bates for damages. The jury returned a verdict in favor of Bates. On appeal, Teems and her parents contend that the trial court erred in charging the jury on the assumption of the risk doctrine and on the duty imposed upon a guest passenger. They further contend that the trial court erred in allowing defense counsel to cross-examine Teems's father about his own experience holding onto a moving car and to elicit his opinion as to whether he or the driver in that incident was more at fault. Finding no reversible error, we affirm.

Following a jury trial, we view the evidence in the light most favorable to the verdict. *DuBois v. Ray*, 177 Ga. App. 349 (339 SE2d 605) (1985).[1] So viewed, the evidence showed that at approximately 11:00 p.m., Janna Teems, Matthew Bates, and Julia Mercurio drove to a church parking lot. The three were close teenage friends who often spent time together, and they met at the parking lot out of boredom. After they arrived there, Teems came up with the idea of "car surfing" on the top of Mercurio's car. Car surfing is the act of riding on the outside of a vehicle as it is moving. Mercurio and Bates agreed to Teems's idea.

Teems then rode around the parking lot while lying on the top of Mercurio's moving car. Bates watched from his own car. After completing the ride, Teems and Mercurio were exhilarated and were laughing as they approached Bates.

Teems suggested that she and Mercurio car surf on Bates's car. Mercurio was nervous about car surfing on Bates's car, told Teems that she thought it was dangerous, and suggested that they not do it. Nevertheless, Mercurio ultimately agreed to car surf with Teems. They did not discuss how fast Bates would drive or the route he would take, although Bates did tell them that he would be careful while he drove around with them on top of his car.

Teems and Mercurio climbed on top of Bates's car and held onto the open sunroof while lying on their stomachs upon the back windshield. Teems lay on the left side of the roof while Mercurio lay on the right. Bates began to drive around the parking lot at a speed of 10-15 miles per hour, the same speed at which Mercurio had driven previously. Teems, realizing her friend was scared, released her right hand from the sunroof and put it around Mercurio. Bates success-

---

[1] The witnesses in this case provided conflicting accounts of the subject accident. In her brief, Teems relies upon the testimony most favorable to her version of events. But "the credibility of the witnesses where they contradict one another, or themselves[,] is always a jury question." (Citation and punctuation omitted.) *Capp v. Carlito's Mexican Bar & Grill #1*, 288 Ga. App. 779, 782 (1) (655 SE2d 232) (2007). The jury was authorized to resolve the conflicting testimony in favor of Bates, and as an appellate court we are bound to construe the evidence in the light most favorable to him as the prevailing party. See *Norton v. Holcomb*, 299 Ga. App. 207 (682 SE2d 336) (2009).

fully made one right-hand turn. As he made a second right-hand turn at a sharper angle, however, Mercurio yelled for him to stop, and Teems fell from the car onto the pavement. Teems was severely injured as a result of the fall and required weeks of hospitalization and rehabilitative therapy.

Bates was criminally charged and pled guilty to reckless driving and serious injury by vehicle. Teems and her parents (collectively, "Teems") then brought this damages action against Bates, asserting claims of negligence and negligence per se. The case was tried before a jury, which found in favor of Bates. This appeal followed.

1. Teems contends that the trial court erred in charging the jury on the assumption of the risk doctrine. At the conclusion of the evidence, the trial court gave the following charge:

> When a person knowingly and voluntarily takes a risk of physical injury the danger of which is so obvious that the act of taking such risk in and of itself amounts to a failure to exercise ordinary care for one's own safety, that person cannot hold another liable for injuries proximately caused by such action even though the injuries may be in part attributable to the negligence of the other person.

Teems contends that the charge was not authorized because the evidence was insufficient to show that she assumed the risk of falling and injuring herself while car surfing on Bates's car.[2] We disagree.

"A trial court has a duty to charge the jury on the law applicable to issues which are supported by the evidence," and a party is entitled to a jury charge on a specific issue as long as there is slight evidence to support it. (Citation and punctuation omitted.) *Jones v. Sperau*, 275 Ga. 213, 214 (2) (563 SE2d 863) (2002). The slight evidence supporting the charge can be direct or circumstantial. Id. Hence, the pertinent question is whether there was at least slight evidence, direct or circumstantial, to support a charge on the assumption of the risk doctrine in this case. We conclude that there was.

> The affirmative defense of assumption of the risk bars recovery when it is established that a plaintiff, without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free

---

[2] Teems also contends that the trial court's charge was an incomplete and misleading statement of the law, but she waived this contention by raising it for the first time in her supplemental appellate brief submitted after oral argument. See *McReynolds v. Prudential Ins. Co. of America*, 276 Ga. App. 747, 750 (1) (b) (624 SE2d 218) (2005); *Currid v. DeKalb State Court Probate Dept.*, 274 Ga. App. 704, 707 (1), n. 8 (618 SE2d 621) (2005).

choice as to whether to engage in the act or not. In Georgia, a defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks.

(Punctuation and footnotes omitted.) *Muldovan v. McEachern*, 271 Ga. 805, 807-808 (2) (523 SE2d 566) (1999). In the vast majority of cases, the plaintiff's consent to assume the risk is not express but rather is implied by his or her conduct. *Young v. Brandt*, 225 Ga. App. 889, 891 (3) (485 SE2d 519) (1997).

Evidence was presented at trial that Teems assumed the risks of car surfing as implied by her conduct. When a person voluntarily undertakes an obviously dangerous activity, that person can be said to have assumed the risks necessarily attendant to that activity. See *Roberts v. Carter*, 214 Ga. App. 540, 541 (448 SE2d 239) (1994) ("[A] person cannot undertake to do what obviously is a dangerous thing . . . without assuming the risks incident thereto and without himself being guilty of such lack of due care for his own safety as to bar him from recovery.") (citations and punctuation omitted). In *Lassiter v. Poss*, 85 Ga. App. 785, 787-789 (1) (b) (70 SE2d 411) (1952), we held that a jury question existed over whether the teenage plaintiff who was injured while sitting on the fender of a moving vehicle has assumed the risk of injury from an automobile accident. See also *Stone v. Cook*, 190 Ga. App. 11, 13-14 (1) (378 SE2d 142) (1989) (jury question existed over whether employee assumed the risk of injury when he rode on the fender of a moving tractor driven by his employer).[3] We discern no ground for distinguishing Teems's riding on the top of a moving vehicle from prior cases involving a person riding on a vehicle fender, an activity that a jury could find was inherently dangerous and posed obvious risks of injury to anyone who participated.

Furthermore, there was testimony that Teems was specifically warned of the dangers of car surfing before she rode atop Bates's car. It is true that Teems did not testify as to her knowledge of the dangers associated with car surfing because she could not remember anything about the incident as a result of her head injuries. But

---

[3] In *DeWinne v. Waldrep*, 101 Ga. App. 570 (114 SE2d 455) (1960), we held that one who stood in the rear of a pickup truck moving across a field while deer hunting assumed the risk of falling out of the truck as a matter of law. Compare *Day v. Phillips*, 107 Ga. App. 824, 824-825 (1) (131 SE2d 778) (1963) (jury question existed over whether plaintiff assumed the risk of falling out of rear bed of pickup truck, where the driver "did not start off slowly but started off with a jerk"). Given the posture of this case on appeal, we need not resolve whether Teems assumed the risk of falling off the moving vehicle while car surfing as a matter of law.

Mercurio testified that when Teems suggested to her that they car surf on Bates's car, she warned Teems that the activity was dangerous and that they should not do it. Mercurio's testimony shows that despite being made aware of the danger involved and being advised against engaging in the activity, Teems voluntarily chose to expose herself to the danger by proceeding to car surf on Bates's moving car.

Nevertheless, Teems argues that the assumption of the risk doctrine does not apply in this case because she was not specifically informed beforehand of the speed at which Bates would drive, the exact route he would drive around the parking lot, or that he would make a sharp right-hand turn. She further argues that the doctrine does not apply because she did not consent to Bates driving around the parking lot in a negligent or reckless manner.[4] We are unpersuaded.

We have held that when a person goes on a thrill ride at an amusement park or fair, the person necessarily accepts the forces generated by changes in speed and direction as "normal hazards of the amusement device," since those changes are "ordinary, necessary and inherent in the [ride] itself and [are] part of the thrill bargained for." *Atlanta Funtown v. Crouch*, 114 Ga. App. 702, 712-713 (3) (152 SE2d 583) (1966). See *Jekyll Island State Park Auth. v. Machurick*, 250 Ga. App. 700, 701-702 (1) (552 SE2d 94) (2001). Indeed, "[the ride's] attraction lies in the exhilaration produced by the speed and suddenness of its movements." (Citation and punctuation omitted.) *Atlanta Funtown*, 114 Ga. App. at 713 (3). As such, a person who goes on a thrill ride assumes the risks generated by normal changes in speed and direction associated with the ride. See id.

Car surfing is itself a type of thrill ride. A person who agrees to car surf necessarily accepts the forces generated by changes in the speed and direction of the moving vehicle as normal hazards of the activity that are necessary and inherent in the activity itself and are part of the sought after thrill. See *Atlanta Funtown*, 114 Ga. App. at 712-713 (3). As such, when Teems agreed to car surf, she assumed the risks of changes in speed and direction associated with car surfing, including the risk that she would fall off of the moving vehicle, even if she was never informed of the specific speed or direction Bates planned to drive. See id.

We likewise reject Teems's argument that the evidence had to

---

[4] While Teems also argues that she did not assume the risk because Bates coerced her into riding on the top of his car, Bates denied having coerced or persuaded Teems or Mercurio into car surfing. He also testified that it was Teems's idea to car surf. In her deposition testimony admitted as a prior inconsistent statement, Mercurio likewise testified that car surfing was Teems's idea.

show that she specifically consented to Bates driving in a negligent or reckless manner in order for her to have assumed the risk of falling and being injured. As an initial matter, we note that Teems contends that Bates was negligent and reckless because he "accelerated and made a sharp right-hand turn without warning." Bates testified, however, that he made a slow acceleration while driving around the parking lot and that when Teems fell, he was driving at the same speed that Mercurio had driven. To the extent there was conflicting testimony on this point, we defer to the jury's resolution of the conflict in favor of Bates. See *Norton*, 299 Ga. App. at 208; *Capp*, 288 Ga. App. at 782 (1). Additionally, Bates testified that he had already made one right-hand turn while driving around the parking lot before he made the second turn that led to Teems falling off of the car. It follows that Teems, at the time of her fall from the car, was not without warning that Bates would be changing directions as he drove.

In any event, our law does not require that Teems must have consented to any individual acts of negligence committed by Bates, but rather that she consented to the known and obvious risks arising from her choosing to car surf, including the risk of falling from the car as the result of changes in speed and direction. See *Fowler v. Alpharetta Family Skate Center*, 268 Ga. App. 329, 332 (3) (601 SE2d 818) (2004); *Desai v. Silver Dollar City*, 229 Ga. App. 160, 165-166 (4) (493 SE2d 540) (1997). And she did consent to those obvious risks, as explained above. Moreover, we have held that a passenger or driver of a motor vehicle assumes the risk of hazards associated with car racing, including the risk that one of the drivers will drive recklessly, lose control on a curve, and swerve into another lane. See *Preston v. Sabetazm*, 269 Ga. App. 451, 452-454 (1) (604 SE2d 224) (2004). See also *Roberts v. King*, 102 Ga. App. 518 (116 SE2d 885) (1960) (passenger involved in a car race on public road assumes the risk of wilful and wanton misconduct by the participating drivers).[5] Likewise, by agreeing to car surf, Teems assumed the risk that Bates might drive recklessly by changing speed or direction in a sudden manner.

---

[5] In contrast, a police officer racing down a public road in an emergency manner does not assume the risk of other drivers failing to act with due care. See *Vaughn v. Pleasent*, 266 Ga. 862 (471 SE2d 866) (1996); *Beringause v. Fogleman Truck Lines*, 200 Ga. App. 822, 823-825 (4) (409 SE2d 524) (1991), disapproved on other grounds, *Robinson v. Star Gas of Hawkinsville*, 269 Ga. 102, 104 (1) (498 SE2d 524) (1998). On the contrary, *by his use of flashing emergency lights*, the officer is insisting that other drivers take care to avoid hitting his vehicle. See *Vaughn*, 266 Ga. at 866 (2); *Preston*, 269 Ga. App. at 454 (1); *Beringause*, 200 Ga. App. at 823 (4). That situation is distinguishable from cases like the present one involving private citizen drivers and passengers. See *Preston*, 269 Ga. App. at 454 (1) (distinguishing *Vaughn* and *Beringause*).

Teems relies upon *Little Rapids Corp. v. McCamy*, 218 Ga. App. 111, 113-114 (1), 117 (4) (460 SE2d 800) (1995), to support her contention that she did not assume the risk that Bates would drive in a negligent or reckless manner. That case, however, involved a truck driver who was injured on a loading dock when other parties negligently mishandled the merchandise that was being loaded onto his truck. See id. at 111-112. The driver was not engaged in an inherently dangerous activity and was unaware that the merchandise had been handled in a negligent manner. In contrast, Teems was engaged in the inherently dangerous activity of car surfing in which the risk of falling was obvious, and there was testimony that Mercurio made her aware of the danger prior to when they engaged in the activity. Thus, *Little Rapids Corp.* is inapposite. See *Fowler*, 268 Ga. App. at 332-333 (4); *Kroger Co. v. Williams*, 257 Ga. App. 833, 836 (572 SE2d 316) (2002).

Teems's reliance upon *Vaughn v. Protective Ins. Co.*, 243 Ga. App. 79, 81-83 (2) (532 SE2d 159) (2000), is likewise misplaced. In that case, we held that the plaintiff passenger who was riding in the back compartment of a flatbed truck did not assume the risk of being run over by another vehicle unable to stop because it was traveling at an excessive speed. See id. Significantly, however, we noted that by riding in the back compartment of the truck without a seatbelt, the plaintiff assumed the risk of being thrown out of the truck. See id. at 82 (2). *Vaughn* thus supports the conclusion that Teems assumed the risk of being thrown off of the moving vehicle. Moreover, Teems was not simply riding in the back compartment of a truck: she was engaging in the inherently dangerous activity of car surfing.

Finally, Teems argues that she was misled into riding on the top of Bates's car, and thus as a matter of law did not assume the risk of injury, because Bates assured her and Mercurio that he would drive carefully around the parking lot but then failed to do so. We do not agree. Such a general assurance did not remove the issue of assumption of risk from the jury, since the jury could conclude that the risk of falling associated with changes in speed and direction while car surfing was so obvious that Teems could not have been misled into believing that the risk had been eliminated. See, e.g., *Young*, 225 Ga. App. at 890, 892-893 (3) (horseback rider assumed the risk of horse throwing and kicking her as a matter of law, although horse trainer had assured her that she would "be fine" riding the horse).[6] Teems's

---

[6] In other cases, we have held that the assurances given by the defendant created a genuine issue of material fact over whether the plaintiff assumed the risk of injury. See *Taylor v. Howren*, 270 Ga. App. 226, 228-229 (2) (606 SE2d 74) (2004) (jury question existed over whether horseback rider injured while attempting to mount an untamed horse assumed the risks associated with "the dangerous act of riding a horse that had not been fully trained,"

argument, therefore, is misguided.

For these reasons, we conclude that there was at least slight evidence that Teems assumed the risk of falling and injuring herself while car surfing on Bates's car. Thus, contrary to Teems's contentions on appeal, the trial court did not err in charging the jury on the assumption of the risk doctrine. See *Jones*, 275 Ga. at 214 (2); *Lassiter*, 85 Ga. App. at 787-789 (1) (b).

2. Teems next argues that the trial court erred in giving the following charge to the jury on the duties of a guest passenger:

> A person riding as a guest may assume that his host driver will not be negligent. However, if a danger arises and the circumstances are such that it would become apparent to a person of ordinary prudence in like circumstances, then it is the duty of the guest to do whatever, in the opinion of a jury, a person of ordinary prudence would or should do in the same or like circumstances.

According to Teems, the charge was not authorized by the evidence because she was not a guest passenger riding in Bates's car and there was no time for her to alter the course of Bates's driving before she fell. We discern no reversible error.

Pretermitting whether the guest passenger charge was appropriate in a case involving car surfing, we conclude that the giving of the charge was harmless under the circumstances. If anything, the giving of the charge *helped* Teems because it informed the jury that a passenger is entitled, at least initially, to assume that the driver will not be negligent, even though Teems had chosen to engage in the inherently dangerous activity of car surfing. "In order to have reversible error, there must be harm as well as error and the lack of harm makes this enumeration of error without merit." (Citation and punctuation omitted.) *Moxley v. Moxley*, 281 Ga. 326, 328 (4) (638 SE2d 284) (2006).

3. Lastly, Teems asserts that the trial court erred in requiring her father to testify on cross-examination about his own experience holding onto a moving car and to give his opinion as to whether he or the driver in that incident was more at fault. Again, we disagree.

Defense counsel questioned Teems's father about an incident

---

since the owner of the horse had assured the rider that the horse was a "good, rideable horse" when in fact it was a "green broke"); *Prillaman v. Sark*, 255 Ga. App. 781 (567 SE2d 76) (2002) (jury question existed over whether plaintiff cheerleader who participated in "basket toss" assumed the risk of injury, where instructor assured her "that it was fine"). Again, given the posture of this case on appeal, we need not resolve whether the facts are more like *Taylor*, *Prillaman*, or *Young*, and thus whether Teems assumed the risk of falling while car surfing as a matter of law.

that occurred when he was a teenager where he held onto a moving car while riding a bicycle. Teems did not object to this line of questioning until defense counsel asked her father whether he or the driver would have been more responsible if he had fallen off his bike. Over objection, Teems's father responded:

> I think it would be some of my responsibility that I shouldn't have been holding onto the car. But the person driving the car should have easily said, no, I'm not doing this. You're being stupid. Don't do it. And would have turned the car off or stopped and not continued. . . .

Again over objection, defense counsel asked Teems's father if he had fallen during the biking incident, would it have been "more [his] fault, more the driver's fault or equal fault." The father responded, "I don't think it's even."

Teems contends that this line of questioning should not have been permitted because it was irrelevant and unfairly prejudicial. We discern no reversible error. As an initial matter, Teems did not object to the questioning of her father about the bike incident until defense counsel attempted to elicit his opinion about who was at fault. "A party who fails to raise a contemporaneous objection to the admissibility of evidence waives the objection." (Punctuation and footnote omitted.) *Wilson v. 72 Riverside Investments*, 277 Ga. App. 312, 315 (4) (626 SE2d 521) (2006). Consequently, Teems waived any objection to her father's testimony up to the point where defense counsel asked him questions concerning who was at fault in the biking incident.

In turn, we need not determine whether the trial court erred in admitting the father's opinion concerning who was at fault in the biking incident, since the admission of the testimony was harmless. See *Moxley*, 281 Ga. at 328 (4). Teems contends that the testimony was harmful because her father conceded by implication that she was at fault for falling off of Bates's moving car. But at most the father's testimony reflects that while he believed Teems was partially at fault for the accident, he believed that Bates was more at fault as the driver. And Teems's counsel elicited similar opinion testimony from Teems's mother on direct examination:

> PLAINTIFFS' COUNSEL: And, of course, you have brought suit against Matt [Bates]. Why did you do that?
> MRS. TEEMS: Because I feel Janna [Teems] does have responsibility up to a certain point. However, Matthew holds the ultimate responsibility. Matthew put the keys in his car and turned the ignition on. He pushed the gas pedal

and made the car go fast. And he also took that right-hand turn going faster than he should have which threw Janna off the car. And so Matthew does have, in my opinion, the ultimate responsibility, the control of that car.

In light of the mother's opinion testimony, any error in the admission of the father's opinion testimony was harmless, as it was cumulative of the testimonial evidence elicited by Teems's own counsel. See *Bridges v. State*, 293 Ga. App. 783, 785 (2) (668 SE2d 293) (2008) (admission of testimony was harmless because it was cumulative of other testimony admitted without objection).

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 11, 2009.

*Houck, Ilardi & Regas, Stuart B. Houck*, for appellants.
*Harper, Waldon & Craig, John B. Craig*, for appellee.