A02A2052. SCHRIEVER et al. v. MADDOX.
(578 SE2d 210)

MILLER, Judge.

Janice Maddox sued Dr. Paul Richard Schriever and (under respondeat superior) his employer for medical malpractice arising out of Schriever's failure to diagnose Maddox's ruptured biceps tendon or to refer Maddox to a specialist. A jury awarded Maddox $533,000, and Schriever and his employer appeal. They argue that the trial court erred in instructing the jury on lost wages as an ele-

ment of damages, when in fact Maddox expressly disclaimed any desire to seek lost wages and accordingly had presented no evidence thereon. We agree with Schriever that this jury instruction was reversible error due to the lack of evidence on the issue.

Construed in favor of the verdict, the evidence showed that while Maddox was at work, a piece of metal deeply sliced her arm near her elbow. Schriever treated her in the emergency room at the local hospital, stitching the laceration and instructing her to see her company doctor in ten days to remove the stitches. Failing to perform adequate tests, he did not diagnose her with a ruptured biceps tendon, nor did he consult with or refer her to an orthopedic surgeon. Maddox returned to work the next day and was placed on light duty. She saw her company doctor as instructed, who subsequently removed the stitches and also did not diagnose a ruptured biceps tendon nor consult with an orthopedic surgeon.

Maddox continued to have pain and problems with her arm and eventually consulted an orthopedic surgeon, who correctly diagnosed her with a ruptured biceps tendon. However, corrective surgery was no longer an option, since the one- to two-week window of opportunity to do such had long since passed. An expert opined that she now had a 15 percent permanent disability in her arm.

Maddox sued Schriever and his employer, as well as the company doctor and his employer, for medical malpractice. Just before trial, she dismissed the claims against the company doctor and his employer with prejudice. At trial she described the day-to-day impact the disability had on her life but admitted that she had returned to work the day after the incident and worked continuously until she voluntarily left work to bear and raise her child. She and her attorney expressly disclaimed any intent to seek lost wages, past or future, in the lawsuit. Accordingly, she submitted no evidence regarding her past wages or future wage potential nor did she request any jury instructions on lost wages or their calculation.

Nevertheless, the court instructed the jury on lost wages (both past and future) as an element of the damages sought and gave the jury specific guidelines for calculating those wages. Following the charge, Schriever and his employer immediately objected, pointing out that no evidence or request justified such an instruction. The court did nothing to correct the charge. The jury returned a verdict of $533,000 in favor of Maddox, which the court entered as its judgment. The court denied defendants' motion for new trial, which again raised these grounds. Defendants appeal.

1. Defendants complain that the court erred in sua sponte instructing the jury on lost wages (present and future) as an element of the damages sought and in giving them specific guidelines on calculating such damages. We agree.

Although diminished capacity to labor is an element of pain and suffering recoverable by one who is physically injured, recovery of lost earning capacity is a separate category of damages that focuses on the permanent or total physical disability of the plaintiff. *Myrick v. Stephanos*, 220 Ga. App. 520, 521 (2) (472 SE2d 431) (1996). Such are special damages that require some evidence upon which a jury can base — with reasonable certainty — a finding as to the amount of such damages. Id.; see *Olariu v. Marrero*, 248 Ga. App. 824, 827 (3) (a) (549 SE2d 121) (2001) ("Lost wages and earnings are recoverable where the evidence shows the amount of loss with reasonable certainty. Loss of future earnings is recoverable where evidence is presented on the permanency of plaintiff's injury, the effect of injury on earnings, and the monetary amount thereof.") (citations omitted). While proof of the plaintiff's actual earnings, either before or after the injury, is not *required* to establish the value of the plaintiff's decreased earning capacity, "there must nevertheless appear some evidence, either direct or circumstantial, tending to show what the plaintiff was capable of earning both before and after the injury." (Citation and punctuation omitted.) *Myrick*, supra, 220 Ga. App. at 521 (2).

Maddox presented no such evidence here. Indeed, on direct examination her attorney had her expressly disclaim any intent to recover such wages or to present evidence regarding same, and her attorney during closing argument argued consistent with this approach. We have repeatedly held that a court's instructing a jury on lost earnings as a category of recoverable damages is reversible error where the plaintiff has not presented evidence of the degree to which the injury reasonably affected the plaintiff's past and future income. *Myrick*, supra, 220 Ga. App. at 522 (2); see *Long v. Serritt*, 102 Ga. App. 550, 555 (4) (117 SE2d 216) (1960), and cases cited therein. Compare *CSX Transp. v. Barnett*, 199 Ga. App. 611, 613 (2) (405 SE2d 506) (1991) (evidence sufficient where plaintiff testified as to his income before and after the injury and as to the specific dollar effect on his annual income).

Maddox claims that the error was harmless, reasoning that since she never asked the jury for lost wages, the jury obviously did not award her such as part of the $533,000 amount. However, "[w]hen an error in the charge of the court is shown to exist, it is presumed to be prejudicial and harmful, and this court will so hold unless it appears from the entire record that the error is harmless." (Citations and punctuation omitted.) *Vaughn v. Protective Ins. Co.*, 243 Ga. App. 79, 83 (3) (532 SE2d 159) (2000). The record does not support a conclusion that the error was harmless. For example, considering the large amount of the award (particularly as compared to Maddox's associated medical expenses of approximately $3,500), we cannot say that,

as a matter of law, the award did not include lost wages as part of the $533,000 in damages. See *Petrolane Gas Svc. v. Eusery*, 193 Ga. App. 860, 862-863 (2) (389 SE2d 355) (1989).

Maddox also argues that defendants waived any objection to the "lost wages" charge by (i) not objecting to the written jury instructions (containing the "lost wages" charge) given to counsel by the court just prior to closing argument or (ii) not objecting to the general jury verdict form, which did not set forth separate categories of damages. So long as a party objects to the jury charge as given before the jury returns its verdict, the objection is timely. *Vaughn*, supra, 243 Ga. App. at 81 (1); see OCGA § 5-5-24 (a). "The purpose of OCGA § 5-5-24 (a) is to allow correction of errors in the charge when there is still time to do so. This was the case here. The court could have withdrawn the charge and instructed the jury to no longer consider [lost wages as damages], or it could have given revised instructions sufficient to clarify the law applicable to the case." (Citations omitted.) *Vaughn*, supra, 243 Ga. App. at 81 (1). Accordingly, failing to object to the written charge given to counsel the morning of closing arguments did not waive the objection that was asserted immediately after the charge was given by the court. Nor did failing to object to the verdict form waive the objection. See *Petrolane*, supra, 193 Ga. App. at 863 (3).

The trial court erred in giving the instructions on lost earnings as a recoverable category of damages. Accordingly, we must reverse. *Myrick*, supra, 220 Ga. App. at 522 (2).

2. We will address the remaining enumerations of error to the extent the issues address liability or are likely to recur on retrial. See *Vaughn*, supra, 243 Ga. App. at 83 (4).

(a) Defendants claim that the court erred in charging the jury on the principles associated with joint tortfeasors and joint proximate cause. However, defendants brought in the evidence that the company doctor may have also been negligent in failing to diagnose the injury correctly or to consult an orthopedic surgeon. Their complaint that no evidence showed this negligence proximately caused Maddox's damages fails in light of the evidence that Schriever's nearly identical actions were a proximate cause of the injuries.

(b) Defendants contend that the court erred in failing to instruct the jury on the principles associated with intervening negligence. However, no evidence here supported such an instruction. The company doctor's allegedly negligent actions were not intervening, but were very similar to Schriever's actions and therefore merely compounded (but did not cut off) the initial negligence of Schriever.

(c) Defendants argue that the court should have instructed the jury on apportioning damages between defending parties under OCGA § 51-12-33 (a). Setting aside defendants' failure to request

such a charge (see *Martin v. McKenney*, 207 Ga. App. 820, 824 (7) (429 SE2d 270) (1993)), we hold that since the company doctor was no longer a party to the action, an instruction on apportionment with him would have been inappropriate. OCGA § 51-12-33 (a) applies only "[w]here an action is brought against more than one person for injury to person or property. . . ."

(d) The remaining enumeration claiming that the amount of damages was excessive is moot.

To the extent that liability has been challenged on appeal, we have ruled against defendants. Accordingly, we reverse and remand the case to the trial court for a new trial on damages only.

*Judgment of liability affirmed. Judgment of damages reversed and case remanded for retrial on damages only. Johnson, P. J., and Blackburn, P. J., concur.*

DECIDED FEBRUARY 11, 2003.

*Downey & Cleveland, William C. Anderson, Russell B. Davis, Alan J. Gibson*, for appellants.

*Moraitakis, Kushel & Pearson, Arnold E. Gardner*, for appellee.