**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** **https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**May 18, 2021**

# In the Court of Appeals of Georgia

A21A0038. CARUTHERS ET AL. v. CITY OF ROCHELLE, GEORGIA.

DILLARD, Presiding Judge.

Willie J. Caruthers—as administrator for the Estate of Harold Caruthers—and Annie Pearl Everson appeal a jury's verdict in favor of the City of Rochelle, Georgia, based upon their claims related to Harold Caruthers's death after falling into a hole dug by City employees. Specifically, they argue that the trial court committed reversible error in two separate instructions to the jury. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that on June 5, 2016, the City of Rochelle was notified of a water leak on private property

---

[1] *See, e.g.*, *Jones v. Bebee*, 353 Ga. App. 689, 689 (839 SE2d 189) (2020).

that housed a dilapidated building. Two city workers and the mayor responded to the call and fixed the leak by digging a three-foot-deep hole. But during this process, it began to rain, and the hole also filled with water that leaked from the pipe prior to its repair. And while the city workers intended to return the following day to refill the hole, it was still "flooding raining" at that time. In the interim, no barriers or warnings were placed around the hole despite general knowledge that it was beside an unofficial pathway used by locals to cross the private property.

Harold Caruthers and Eva Mae McKinney lived across from the dilapidated building and beside the area where the city dug the hole. They both saw the City dig the hole on June 5, because the workers used a backhoe almost directly in front of their home, and both were aware that water had been leaking into the road from the issue with the pipe. The next day (on June 6), despite the pouring rain, Harold decided to walk to a store to buy cigarettes. But Harold never returned home. And the following day, McKinney found him dead in the hole beside the pathway.[2] A pile of dirt removed from the hole was located within that pathway.

---

[2] According to measurements made by the coroner, when Harold's body was removed, the hole was 72 inches long by 48 inches wide, 36 inches deep, and filled with 13 inches of water.

Harold's brother (Willie) subsequently filed suit against the City to recover for Harold's personal injuries and death, alleging claims of negligence and nuisance.[3] Specifically, the complaint asserted that the City was negligent in its failure to erect barricades or warnings around the hole after allowing it to fill with water, and that the same was a nuisance.

At the time of his death, Harold was hampered by mobility issues due to having an injured foot and knee. And at trial, both medical experts agreed that Harold had an underlying heart condition and died due to a cardiac event, the cause of which could not be determined. Although the appellants' expert also opined that Harold drowned in conjunction with the event, she was clear that the cardiac event *preceded* the inhalation of water from the hole. Ultimately, the jury found in favor of the City. This appeal follows the trial court's denial of appellants' motion for new trial.

1. First, appellants argue that the trial court erred by charging the jury on the trespasser doctrine. We disagree.

The record shows that the City requested a charge on the definition of a trespasser and the duty of care owed to a trespasser. Then, at the charge conference,

---

[3] For reasons that are not relevant to the issues on appeal, Annie Pearl Everson was later added as a party plaintiff.

appellants objected to the proposed charge, arguing that Harold was not a trespasser because the City did not own the subject property. But after lengthy argument by the parties, the trial court decided to give the charge.

Appellants contend that the trial court erred in so instructing the jury because the City does not own the land on which the hole was dug, making the trespasser doctrine inapplicable. Instead, they maintain that the trial court should have only charged the jury to consider whether the City was negligent. And in support of their position that the trespasser doctrine does not apply to injuries caused by the negligence of third parties on another's land, the appellants almost exclusively cite to non-binding authorities from foreign jurisdictions. We find these foreign cases unavailing, and we disagree that the trial court erred in giving the complained-of charge.

For purposes of trespass, Georgia law defines "possessor of land" to mean "the landowner, occupant of the land, holder of any easement to the land, or lessee of the land."[4] And it is well established that "a person who owns *or controls* property owes

---

[4] OCGA § 51-3-3 (a).

4

no duty to a trespasser upon it, except not to willfully or recklessly injure him[.]"[5] So, while one who owns or controls property "cannot intentionally injure or lay traps for a trespasser (or a licensee) upon his land, he owes no other duty to him."[6]

Here, the evidence shows that the small portion of land at issue was under the City's *control* at the time in question for purposes of fixing a water leak occurring in

---

[5] *Atlantic Coast Line R.R. Co. v. O'Neal*, 180 Ga. 153, 155 (178 SE 451) (1934) (emphasis supplied); *accord Trammell v. Baird*, 262 Ga. 124, 125 (413 SE2d 445) (1992); *S. R.R. Co. v. Chatham*, 124 Ga. 1026, 1030 (2) (53 SE 692) (1906); *Harrison v. Plant Imp. Co., Inc.*, 273 Ga. App. 884, 886 (2) (616 SE2d 123) (2005); *Renaud v. Black*, 254 Ga. App. 31, 33 (3) (561 SE2d 183) (2002); *see* OCGA § 51-3-3 (b) ("A lawful possessor of land owes no duty of care to a trespasser except to refrain from causing a willful or wanton injury."); *Handberry v. Stuckey Timberland, Inc.*, 345 Ga. App. 191, 195 (812 SE2d 547) (2018) ("[G]enerally, a landowner owes no duty to a trespasser except to avoid willfully or recklessly injuring him." (punctuation omitted)); *see also Nashville, C. & St. L. R.R. Co. v. Priest*, 117 Ga. 767, 769 (45 SE 35) (1903) ("[A] trespasser, be he man or infant, is not legally entitled to complain of lack of diligence on the part of a third person which falls short of gross negligence.").

[6] *Harrison*, 273 Ga. App. at 886 (2) (punctuation omitted); *accord Kahn v. Graper*, 114 Ga. App. 572, 576 (152 SE2d 10) (1966); *see Trammell*, 262 Ga. at 125 (noting that a landowner has a duty to trespassers not to set a mantrap on property); *see also Watson Used Cars, LLC v. Kirkland*, 343 Ga. App. 113, 115 (805 SE2d 920) (2017) ("The doctrine of mantrap or pitfall, however, rests upon the theory that a property owner is expecting a trespasser or a licensee and has prepared the premises to do him injury." (punctuation omitted)).

5

that location within its pipe system.[7] So, despite the appellants' arguments to the contrary, under both the evidence presented at trial and Georgia law, the trial court did not err by instructing the jury on the trespasser doctrine.[8]

2. Finally, the appellants contend that the trial court committed reversible error by charging the jury as follows:

> Harold Caruthers' negligence in avoiding the perilous situation created by the defendant after it is or should have been plain to him, while he still had an opportunity to avoid it, will as to such negligent plaintiff

---

[7] *Cf. Merlino v. City of Atlanta*, 283 Ga. 186, 189 (2) (657 SE2d 859) (2008) (affirming grant of summary judgment in favor of City on plaintiff's nuisance claim when there was no evidence that City "owned the pipe or exercised direct dominion and control over it," *i.e.*, there was "no evidence that the City ever owned, constructed, maintained, or installed the pipe"); *Rouse v. City of Atlanta*, 353 Ga. App. 542, 547 (2) (b) (839 SE2d 8) (2020) (affirming denial of summary judgment in favor of plaintiff when issues of fact still remained as to whether "the City owned, constructed, maintained, or installed the sewage pipe and whether the City took any affirmative steps to repair or restore the pipe"); *City of Atlanta v. Hofrichter/Stiakakis*, 291 Ga. App. 883, 886 (1) (a) (663 SE2d 379) (2008) ("While we agree with the City that there is no evidence that it installed the subject pipe or owned an easement relating to it, the record clearly shows that the City 'undertook to maintain' the pipe for over seven years, including repair and replacement. Such exercise of control is sufficient to establish nuisance liability." (footnote omitted)).

[8] *See Sherwood v. Williams*, 347 Ga. App. 400, 407 (3) (820 SE2d 141) (2018) ("It is true that the giving of a charge can amount to reversible error when it requires the jury to make a finding that is not authorized by the evidence."); *Autry v. Adams*, 95 Ga. App. 207, 211 (3) (97 SE2d 585) (1957) ("Generally, a charge by the court to the jury must be authorized by the evidence[.]" (punctuation omitted)).

6

render him the sole author of his misfortune, and as to him will constitute the sole proximate cause of his injuries and death.

After giving this charge, the trial court sustained appellants' objection to same on the basis that the instruction omitted the directive that it only applied *if* the jury found that Harold was negligent. So, the court recharged the jury that it was to disregard the foregoing instruction. Appellants *agreed* to this curative measure, but now argue that it was ineffective.

To begin with, appellants have arguably abandoned this contention by failing to provide a citation to anything other than the most basic authority with nothing to support their assertion that the court's curative measure was in any way erroneous or harmful.[9] But even setting that aside, a trial court has the ability to withdraw charges

---

[9] *See, e.g.*, *Gunn v. State*, 342 Ga. App. 615, 623-24 (3) (804 SE2d 118) (2017) (holding that appellant abandoned two claims of error when, beyond one or two case citations to "the most basic legal authority" as to the purpose of the legal rule at issue and the general standard applicable to claims of ineffective assistance of counsel, the appellant provided no legal authority to support his specific contentions as to how and why the trial court committed error, and noting that "mere conclusory statements are not the type of meaningful argument contemplated by our rules" (punctuation omitted)). We will not address the appellants attempts to expand upon this argument by contending in their reply brief that the trial court also somehow commented upon the evidence. *See, e.g.*, *Leonard v. State*, 325 Ga. App. 577, 577 n.1 (754 SE2d 155) (2014) (holding that appellant's attempt to expand the scope of his arguments with additional argument for reversal in reply brief was an assertion of an argument "beyond the scope of the enumerated error and will not be considered by this Court");

7

and may instruct juries to no longer consider them—which is the very purpose of the requirement that objections be made before the jury returns a verdict.[10] And in the absence of evidence to the contrary, we presume that jurors follow the instructions of the trial court.[11] The appellants point to no such evidence, and so this enumeration of error is without merit.

*Perez v. Atlanta Check Cashers, Inc.*, 302 Ga. App. 864, 867 n.3 (692 SE2d 670) (2010) ("[A] party may not use his reply brief to expand his enumeration of errors by arguing the incorrectness of a trial court's ruling not mentioned in the enumeration." (punctuation omitted)).

[10] *See* OCGA § 5-5-24 (a) ("Except as otherwise provided in this Code section, in all civil cases, no party may complain of the giving or the failure to give an instruction to the jury unless he objects thereto *before the jury returns its verdict*, stating distinctly the matter to which he objects and the grounds of his objection." (emphasis supplied)); *Schriever v. Maddox*, 259 Ga. App. 558, 561 (1) (578 SE2d 210) (2003) ("The purpose of OCGA § 5-5-24 (a) is to allow correction of errors in the charge when there is still time to do so. This was the case here. The court could have withdrawn the charge and instructed the jury to no longer consider lost wages as damages, or it could have given revised instructions sufficient to clarify the law applicable to the case." (punctuation omitted)); *Vaughn v. Protective Ins. Co.*, 243 Ga. App. 79, 81 (1) (532 SE2d 159) (2000) (same).

[11] *See Allen v. State*, 277 Ga. 502, 503 (3) (c) (591 SE2d 784) (2004) ("[Q]ualified jurors under oath are presumed to follow the trial court's instructions."); *Smith v. State*, 267 Ga. 372, 374 (3) (477 SE2d 827) (1996) (same); *Land v. Ricks*, 288 Ga. App. 497, 503 (3) (654 SE2d 643) (2007) ("In the absence of clear evidence to the contrary, qualified jurors, under oath, are presumed to follow the instructions and procedural directives of the trial court." (punctuation omitted)); *Harris v. State*, 202 Ga. App. 618, 620 (3) (a) (414 SE2d 919) (1992) (same).

For all these reasons, we affirm the judgment in favor of the City.

*Judgment affirmed. Mercier and Colvin, JJ., concur.*