**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**November 1, 2024**

# In the Court of Appeals of Georgia

A24A1027. AU MEDICAL CENTER, INC. v. DOROTHY DALE,
   AS EXECUTOR OF THE ESTATE OF JOHN DALE.

HODGES, Judge.

This case turns on whether OCGA § 51-12-33 (b) (2005), which addresses apportionment in "an action . . . *brought* against more than one person for injury to person or property," applies to cases initially filed against multiple named defendants, but in which a single named defendant remains at the time of trial after all other named defendants have been dismissed. (Emphasis supplied.) AU Medical Center, Inc. ("AUMC"), as the sole remaining named defendant in this medical malpractice action, appeals an order of the State Court of Richmond County, arguing that the trial court erred in holding that (1) "the reduction of damages based on non-party fault,"

as provided by former OCGA § 51-12-33 (b),[1] does not apply in this case; and (2) "there shall be no reduction of damages based upon the jury's apportionment of fault to any non-party." Because we conclude that the plain language of former OCGA § 51-12-33 (b), as well as precedent from our appellate courts, demonstrate that the statute does not apply in this case, we affirm that portion of the trial court's judgment. However, despite the inapplicability of former OCGA § 51-12-33 (b), the trial court's order includes language regarding "the jury's *apportionment* of fault to non-part[ies]," and we therefore vacate that portion of the court's order.

At the heart of this case is the meaning of former OCGA § 51-12-33 (b), and "[s]tatutory interpretation presents a question of law and is subject to de novo review." *Cavalier Convenience v. Sarvis*, 305 Ga. App. 141, 142 (699 SE2d 104) (2010). See also *Accor North America v. Todd*, 318 Ga. App. 317, 319 (733 SE2d 846) (2012) (noting that trial court held statute did not apply "[i]n ruling on the motion for partial summary judgment").[2] So viewed, the record indicates that John Dale visited AUMC

---

[1] As will be discussed in greater detail, the General Assembly amended OCGA § 51-12-33 in 2022. See n. 5, infra.

[2] AUMC's motion most closely resembles a motion for partial summary judgment, which neither alters our standard of review nor requires that we dismiss AUMC's appeal as advisory or premature. See *Owens v. Novae*, 357 Ga. App. 240, 243

on July 10, 2017 complaining of trouble breathing, weakness, and coughing up blood. AUMC recommended Mr. Dale receive in-patient care and admitted him. Mr. Dale was discharged on July 14, 2017, despite exhibiting certain factors suggesting a worsening infection. Early the next morning, Mr. Dale's wife, Dorothy, telephoned 911 for an ambulance due to Mr. Dale's declining condition and difficulty breathing. Dorothy followed the ambulance to the hospital, but Mr. Dale died before she arrived.

Dorothy Dale ("Dale"), as the executor of Mr. Dale's estate, filed a renewal action[3] against AUMC, AU Health System, Inc., MCG Health System, Inc., MCG Health, Inc., AU Medical Associates, Inc., Michael Sumner, M. D., and the Board of Regents of the University System of Georgia raising causes of action for medical malpractice, vicarious liability, ordinary negligence, fraud, negligent infliction of emotional distress, and breach of contract. Following a series of amended complaints, and voluntary dismissals and withdrawals approved by the trial court, the only causes

(1) (850 SE2d 457) (2020) (noting that although a party did not style motion as one for partial summary judgment, "we look at the content of the motion and not its nomenclature"); see also *Zaldivar v. Prickett*, 297 Ga. 589, 590 (774 SE2d 688) (2015) (analyzing motion for partial summary judgment on "the meaning of the apportionment statute").

[3] Dale's first amended complaint described the original action, which was filed on January 11, 2019 and voluntarily dismissed on February 11, 2019.

of action that remain are medical malpractice and vicarious liability claims against AUMC.

In preparation for trial, AUMC filed a motion concerning the applicability of former OCGA § 51-12-33, asking the trial court to hold that: (i) the statute "requires apportionment of both fault and damages to nonparties in this case, because it was originally brought against more than one defendant[;]" (ii) subsection (d) (1) of the statute "requires the trier of fact to consider the fault of nonparties [Dale] entered into settlement agreements with and apportion damages among the persons who are liable according to the percentage of fault of each" (punctuation omitted); and (iii) alternatively, AUMC is entitled to a setoff in which any potential verdict would be reduced by the amount Dale received in settlements with former defendants in the action.

Dale responded to AUMC's motion and, following a hearing,[4] the trial court entered an order concluding that "the reduction of damages based on non-party fault does not apply in the instant case" and that, as a result, "there shall be no reduction

---

[4] To the extent a transcript exists, AUMC did not request, in its notice of appeal, that the Clerk of the State Court of Richmond County include a transcript of the hearing in the record on appeal.

4

of damages based upon the jury's apportionment of fault to any non-party." The trial court granted AUMC a certificate of immediate review, and we granted its application for interlocutory appeal. This appeal follows.

1. AUMC first contends that the trial court erred in concluding that, despite the fact that AUMC is the sole named defendant remaining for trial, "the reduction of damages based on non-party fault does not apply in the instant case." According to AUMC, the rules of statutory construction, as well as the plain language of former OCGA § 51-12-33 (b), confirm that the term "brought" as used in the statute refers to the number of defendants at the time an action is filed, not when that action proceeds to trial. As a result, the reduction of damages based upon non-party fault would be available. We do not agree.

When interpreting the meaning of a statute,

we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Consequently, courts sometimes refer to the rules of English grammar, inasmuch as those rules are the guideposts by which ordinary speakers of the English language commonly structure their words, and

the legislature is presumed to know the rules of grammar. Applying these principles, if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

(Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013); see also *Hill v. Kemp*, 366 Ga. App. 19, 24 (1) (880 SE2d 590) (2022). Similarly,

a statute draws its meaning from its text. . . . The common and customary usages of the words are important, but so is their context. For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question.

(Citations and punctuation omitted.) *Zaldivar v. Prickett*, 297 Ga. 589, 591 (1) (774 SE2d 688) (2015). With these principles in mind, we turn to the statute at issue.

(a) *OCGA § 51-12-33 (b) (2005)*. At the time Dale filed her renewal action, OCGA § 51-12-33 (b) (2005) provided that

[w]here an action is *brought against more than one person* for injury to person or property, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall after a reduction of damages pursuant to subsection (a) of this Code section, if any,

6

apportion its award of damages among the persons who are liable according to the percentage of fault of each person. Damages apportioned by the trier of fact as provided in this Code section shall be the liability of each person against whom they are awarded, shall not be a joint liability among the persons liable, and shall not be subject to any right of contribution.[5]

(Emphasis supplied.) As part of the apportionment scheme, OCGA § 51-12-33 (c) provided that, "[i]n assessing percentages of fault, the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit." On the other hand, the contribution statute, OCGA § 51-12-32 (a), mandated:

Except as provided in Code Section 51-12-33, . . . contribution among several trespassers may be enforced just as if an action had been brought against them jointly. Without the necessity of being charged by action or

----

[5] The General Assembly amended OCGA § 51-12-33 in 2022, see Ga. L. 2022, p. 802, § 1, changing the opening clause from "[w]here an action is brought against *more than one person*" to "[w]here an action is brought against *one or more persons*[.]" (Emphasis supplied.) OCGA § 51-12-33 (b) (2022). The rest of the statute remained unchanged. Inasmuch as the 2022 revision to the statute is not retroactive and only applies to cases filed after May 13, 2022, see Ga. L. 2022, p. 802, §§ 2-3, the parties do not dispute that the former version of the statute applies here since Dale filed this renewal action in July 2019.

judgment, the right of a joint trespasser to contribution from another or others *shall continue unabated and shall not be lost or prejudiced by compromise and settlement of a claim or claims for injury to person or property or for wrongful death and release therefrom.*[6]

(Emphasis supplied.)[7]

(b) *Survey of Interpretation of OCGA § 51-12-33 (b) (2005).* As apportionment has been the subject of increasing litigation over the years, a brief survey of cases relevant to our review of OCGA § 51-12-33 (b) (2005) and its contours is in order.

---

[6] OCGA § 51-12-32 (b) and (c) further provide that,

[i]f judgment is entered jointly against several trespassers and is paid off by one of them, the others shall be liable to him for contribution. Without the necessity of being charged by an action or judgment, the right of indemnity, express or implied, from another or others *shall continue unabated and shall not be lost or prejudiced by compromise and settlement of a claim or claims for injury to person or property or for wrongful death and release therefrom.*

(Emphasis supplied.) OCGA § 51-12-32 (b), (c).

[7] Despite the 2022 amendment to the apportionment statute, the contribution statute has remained unchanged.

8

First, in *Schriever v. Maddox*, a plaintiff sued an emergency room doctor and the doctor's employer, as well as a company doctor and the company doctor's employer, for medical malpractice. 259 Ga. App. 558, 559 (578 SE2d 210) (2003). Just prior to trial, the plaintiff dismissed the company doctor and the company doctor's employer as defendants with prejudice. Id. The remaining defendants appealed following the entry of a verdict in the plaintiff's favor, arguing that the trial court should have instructed the jury on "apportioning damages between defending parties under OCGA § 51-12-33 (a) [(1987)]." Id. at 561 (2) (c). We summarily held that "since the company doctor was no longer a party to the action," an instruction on apportionment as to the company doctor "would have been inappropriate" because the statute "applies only where an action is brought against more than one person. . . ." (Punctuation omitted.) Id. at 562 (2) (c).

Then, in the first of a collection of cases analyzing OCGA § 51-12-33 (b) (2005), a plaintiff sued a single defendant for damages following a motor vehicle collision. *Zaldivar*, 297 Ga. at 589. The Supreme Court of Georgia stated that

> we know from [OCGA § 51-12-33] paragraph (f) (2) that a finding of nonparty "fault" does not subject [a] nonparty to liability, and for that reason, those "who are liable" — the subjects of subsection (b) —

9

necessarily must be limited to named defendants with liability. Subsection (b) simply does not concern nonparties. Reading the apportionment statute as a whole, it seems quite clear that *subsection (b) is instead concerned with damages awarded in cases in which there is more than one named defendant with liability*, providing that the award must be apportioned among the liable defendants according to their respective fault, and clarifying that "damages apportioned shall be the liability of each person against whom they are awarded and shall not be a joint liability among the persons liable.

(Citation and punctuation omitted; emphasis supplied.) Id. at 600 (1), n. 7. The Court further held that "[b]ecause a settlement agreement ordinarily extinguishes conclusively any potential liability that the settlement was meant to resolve, a nonparty with whom the plaintiff has settled usually would not have any continuing potential liability to the plaintiff in tort, having instead converted its potential liability to a contractual one." Id. at 597 (1).

Later, our Supreme Court held that the plain language of former subsection (b) limited its application to "cases 'brought against more than one person,' not in single-defendant lawsuits. . . ." *Alston & Bird v. Hatcher Mgmt. Holdings*, 312 Ga. 350, 351 (862 SE2d 295) (2021), superseded by statute as recognized by *Deaton Holdings v.*

*Reid*, 367 Ga. App. 746, 748 (1), n. 3 (888 SE2d 333) (2023).[8] In *Alston & Bird*, which involved only one named defendant throughout the life of the case, the Court noted that

> [l]ooking at the applicable subsections of the apportionment statute in relationship with the whole, the plain language of the text provides that damages assessed against a defendant may be reduced according to the percentages of fault allocated to all who contributed to the alleged injury or damages, including nonparties — *but damages may be reduced according to nonparty fault only in cases brought against multiple defendants.*

(Emphasis supplied.) Id. at 354 (2).[9] The Court further explained that

> subsection (b) is the only provision in the statutory apportionment scheme that authorizes apportioning damages based on the fault of persons *other than* the plaintiff and a single defendant (i.e., additional defendants and nonparties). Where [OCGA § 51-12-33 (b)] applies, . . . the percentage of fault of a nonparty must be considered when apportioning damages to party defendants . . ., and a given defendant is liable only for the damages corresponding to the percentage of fault

---

[8] In particular, the Court cited *Zaldivar* and noted that it had "expressly left open the question of whether [applying OCGA § 51-12-33 (b) in single-defendant cases] was proper." *Alston & Bird*, 312 Ga. at 351.

[9] Importantly, the Court noted that, as the phrase is used in OCGA § 51-12-33 (b) (2005), "[w]e have already determined that 'persons who are liable' includes only *named defendants*." (Emphasis supplied.) *Alston & Bird*, 312 Ga. at 355 (2).

allocated to that defendant. . . . But . . . "[b]y its plain language, the phrase at the outset of subsection (b) — 'where an action is brought against more than one person' — limits the application of subsection (b) to an action brought against at least two defendants.

(Citation and punctuation omitted; emphasis supplied.) Id. at 356 (2). The Court also acknowledged that applying former subsection (b) to single-defendant cases might "advance some of the intentions behind the Tort Reform Act better than the statute" as the Court was interpreting it, but that the Court was constrained by the language of the statute. Id. at 358 (2).[10] As such, the former apportionment statute could not be applied "to reduce damages according to the percentage of fault allocated to a nonparty in a case with only one named defendant." Id. at 356 (2).

---

[10] Notably, the Court explained that

[j]ust because OCGA § 51-12-33 (b) does not apply to cases with a single defendant does not mean that a single defendant is without a remedy against its joint tortfeasors. Where apportionment does not apply, joint tortfeasors who both proximately cause a single injury are jointly and severally liable for damages caused by the injury, and a tortfeasor may seek contribution from its joint tortfeasor(s).

*Alston & Bird*, 312 Ga. at 356 (2), n. 2.

In *Ga. CVS Pharmacy v. Carmichael*, the plaintiff filed a lawsuit against CVS and various additional defendants, but CVS was the only remaining named defendant at the time of trial. 362 Ga. App. 59, 60, n. 1 (865 SE2d 559) (2021) ("*Carmichael I*"). In that case, we acknowledged the Supreme Court's holding in *Alston & Bird* and noted that

> [t]he Court concluded that, under the plain text of the apportionment statute, a trial court is only entitled to apportion damages to non-parties under OCGA § 51-12-33 (b) when there are multiple named defendants in the case. Otherwise, when only one named defendant is present in the case, OCGA § 51-12-33 (a) controls and provides that damages may only be reduced or apportioned based on the amount of fault assigned to the plaintiff.

(Citations omitted.) Id. at 71 (3).[11] In applying these principles, we determined that, where a party "was the only named defendant in the case *by the time the case proceeded*

---

[11] We further acknowledged these principles in *Deaton Holdings*, another case involving a single defendant. 367 Ga. App. at 747-749 (1). There, we determined that the trial court correctly denied a plaintiff's motion to add party defendants who were not already parties to the action and instead held that the plaintiff "may . . . have a right of contribution" from those nonparties. Id. at 748 (1).

*to trial*[,]" former OCGA § 51-12-33 (b) did not allow the amount of damages to be reduced based on nonparty fault. (Emphasis supplied.) Id. at 72 (3).[12]

Next, we reviewed the foregoing authorities in *Eliezer v. Mosley*, 369 Ga. App. 102, 104-105 (891 SE2d 555) (2023). In *Eliezer*, a plaintiff sued a dentist and the dentist's employer for professional malpractice. Id. at 102. The two defendants sought to assess fault against three nonparty dentists who also treated the plaintiff, but the trial court ultimately struck the defendants' notice. Id. at 105. In affirming the trial

---

[12] This holding in *Carmichael I* — that the version of OCGA § 51-12-33 (b) in effect at that time did not apply to a case brought against a single defendant remaining at the time of trial — is binding and remains good law, as it was left undisturbed by the Supreme Court in *Ga. CVS Pharmacy v. Carmichael*, 316 Ga. 718, 736-737 (III) (890 SE2d 209) (2023) ("*Carmichael II*"). While the Supreme Court disagreed with our rationale on the issue of "whether a jury could rationally allocate fault to CVS, but no fault to [a] shooter, an intentional tortfeasor, whose actions directly caused Carmichael's injuries[,]" id. at 736 (III), it affirmed our judgment and did not reach "the issue of whether apportionment to a nonparty would even have been permitted under the version of OCGA § 51-12-33 (b) in effect *at the time of trial*. . . ." (Emphasis supplied.) Id. at 740 (III), n. 16. Although the Supreme Court added that "whether OCGA § 51-12-33 (b) would have applied under these circumstances remains an open question[,]"id., the Court did not criticize, disapprove, reverse, or vacate our analysis of former OCGA § 51-12-33 (b) in *Carmichael I*, such that our holding remains good law. As a result, AUMC's broad assertion that *Carmichael I* is no longer good law is not well-founded, and we decline AUMC's invitation to overrule *Carmichael I*. Interestingly, it was on the heels of *Carmichael II* that the General Assembly amended OCGA § 51-12-33 (b). See *Eliezer v. Mosley*, 369 Ga. App. 102, 104, n. 2 (891 SE2d 555) (2023).

14

court, we began by noting that "[t]he central question in this appeal is whether a percentage of fault can be assessed to a nonparty under the former version of Georgia's apportionment statute, OCGA § 51-12-33, where there are two defendants named in the lawsuit, but one of the defendant's liability is solely vicarious." (Footnote omitted.) Id. at 102. After an examination of authorities from our Court and our Supreme Court, we opined that "the plain language of the statute and Supreme Court of Georgia case law reflect that the proper test is whether fault is divisible among the *named defendants*[.]" (Emphasis in original). Id. at 106. Because there was "no legal means of dividing fault" between the two named defendants, we concluded that OCGA § 51-12-33 (b) did not apply and that "percentages of fault [could not] be allocated to the nonparty dentists. . . ." Id. at 108.

Finally, in a case decided earlier this year, the plaintiffs eventually sued nine different defendants for damages resulting from a motor vehicle collision. *Southern Oil Refinery v. Price*, 372 Ga. App. 427 (1) (903 SE2d 693) (2024). During the course of litigation, three parties confessed judgment to the plaintiffs but were not dismissed from the action, while two other defendants were ultimately dismissed on summary judgment following an appeal to this Court. Id. at 427-428 (1); see also *Stubbs Oil v.*

15

*Price*, 357 Ga. App. 606 (848 SE2d 739) (2020) (concluding that fuel owner, which contracted with Southern Oil for transport of the fuel, was not liable for Southern Oil's driver's actions and, therefore, reversing trial court's denial of summary judgment to fuel owner).[13] Prior to trial, three remaining *Southern Oil* defendants[14] filed a notice of apportionment as to the three defendants who confessed judgment, 372 Ga. App. at 428 (1); the plaintiffs moved in limine to prohibit argument on the apportionment of fault, and the trial court agreed. Id. Following a jury verdict in the plaintiffs' favor, the trial court "determined that this was a 'single tortfeasor case'" and entered a judgment that included a partial reduction of the verdict, and the three remaining defendants appealed. Id. at 428-429 (1).

> We began by noting that
>
> by its plain language, the phrase at the outset of former [OCGA § 51-12-33] subsection (b) — where an action is brought against more than one person — limits the application of subsection (b) to an action brought against at least two defendants. In other words, subsection (b) is

---

[13] As of the date of this opinion, Price's petition for certiorari is pending in the Supreme Court of Georgia. See *Price v. Southern Oil Refinery*, Case No. S25C0011 (docketed August 5, 2024).

[14] The defendants included the at-fault driver, his employer, and the employer's insurer. *Southern Oil*, 372 Ga. App. at 427 (1).

applicable in cases where there is more than one named defendant and fault is capable of division.

(Citations and punctuation omitted.) *Southern Oil*, 372 Ga. App. at 429 (2). Because "there were numerous named defendants in this lawsuit at all times[,]" we concluded that "this is not a single tortfeasor case" and that, as a result, the former OCGA § 51-12-33 (b) applied. (Emphasis omitted.) Id. at 428 (1), n. 2; 430 (2).[15] Accordingly, we

---

[15] Relevant to this appeal, we noted that "[t]he parties and amici focus much of their briefing on the meaning of the word 'brought' within [OCGA § 51-12-33 (b)]." (Footnote omitted.) *Southern Oil*, 372 Ga. App. at 429 (2). However, we concluded that, "no matter whose interpretation of the meaning of the word 'brought' we rely upon — either meaning the filing of the original action, as argued by Southern Oil, or meaning the remaining defendants at the time a case is brought to trial, as argued by the Prices — there were numerous named defendants in this lawsuit at all times." (Emphasis omitted.) Id. at 430 (2). As a result, *Southern Oil* was, we think, ultimately decided correctly.

However, this Court also went too far in *Southern Oil* by mischaracterizing the Supreme Court's holding in *Carmichael II* to suggest that *Carmichael I* was no longer good law, instead of merely pretermitting an issue that was unnecessary for it to decide. 372 Ga. App. at 430 (2) ("[T]he Supreme Court of Georgia has since disapproved of our reasoning in *Carmichael* [*I*], noting that 'whether OCGA § 51-12-33 (b) would have applied under these circumstances remains an open question.' Further, even if our *Carmichael* [*I*] decision remained good law, it is inapposite to the case because, in this case, there were numerous defendants that remained at the time of trial.") (citation and punctuation omitted). Upon a proper characterization of the Supreme Court's disagreement with this Court's reasoning in *Carmichael I* on a separate issue, see n. 12, supra, we therefore disapprove of *Southern Oil* only to the extent it suggests that *Carmichael I* is no longer good law.

17

vacated the trial court's judgment and remanded the case for a recalculation of damages. Id. at 431 (2).

(c) *Analysis*. Against this backdrop, we now proceed to the question that has remained conspicuously unanswered: whether the term "brought," as used in the former version of OCGA § 51-12-33 (b), refers to the number of named defendants when a case is initiated *or* to the number of named defendants remaining in the case at the time of trial. For the following reasons, we conclude it is the latter. This conclusion is directed by our precedent regarding our apportionment statutes and the current posture of the case, given that all other defendants originally named in the renewal action have been dismissed as named defendants, leaving only AUMC remaining for trial.

In the consolidated pre-trial order, Dale identified AUMC as the sole named defendant and asserted that AUMC was solely responsible for all damages regardless of the percentage of fault assessed by the jury against any nonparty. The trial court acknowledged that the Supreme Court "declined to reach the issue" in *Carmichael II,* 316 Ga. at 740 (III), n. 16, and that based on our decision in *Carmichael I*, apportionment did not apply.

18

Once again, former OCGA § 51-12-33 (b) provided that

> [w]here an action *is brought* against more than one person for injury to person or property, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall after a reduction of damages pursuant to subsection (a) of this Code section, if any, apportion its award of damages among the persons who are liable according to the percentage of fault of each person.

(Emphasis supplied.) As we have noted, "we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." (Citations and punctuation omitted.) *Deal*, 294 Ga. at 172-173 (1) (a). We conclude that the plain language of the statute confirms that it applies only to actions that involve more than one named defendant at trial.

Contrary to AUMC's arguments,[16] the phrase "is brought" is a present tense form of the verb "bring" written in a passive voice. See, e.g., *Webb v. Nat. Union Fire Ins. Co.*, 207 F3d 579, 584 (9th Cir. 2000) (holding that the statutory phrase "an action *is brought*" is written "in the passive voice, permitting fees after 'an action is brought[;]' [i]t is not limited, for example, to the situation in which 'an insured *brings* an action'") (emphasis supplied); see also *Singh v. Attorney General of the United States*, 12 F4th 262, 272 (II) (B) (1) (3d Cir. 2021) ("The natural reading of the passive voice, present tense verb ('[a]ny alien who is convicted') indicates it is important that citizenship status be assessed as of the time of conviction."). As a result, former OCGA § 51-12-33 (b) only applies in an action that "is brought against more than one person" which is then evaluated by a "trier of fact" at trial. Therefore,

---

[16] We are mindful of AUMC's arguments that "brought" may be defined as the initial filing of a lawsuit, rather than the pursuit of — or bringing — a case to trial. See Black's Law Dictionary (12th ed. 2024) (defining "bring an action" as "[t]o sue; institute legal proceedings"). Compare OCGA § 9-3-33 ("actions for injuries to the person shall be *brought* within two years after the right of action accrues") (emphasis supplied); *Jordan v. Bosworth*, 123 Ga. 879, 880 (51 SE 755) (1905) ("There is no substantial difference between *bringing* a suit, and *commencing* a suit[.]") (emphasis in original). So too did we consider AUMC's arguments concerning the meaning of "brought" in scattered and unrelated sections of the Code. In view of the plain language of former OCGA § 51-12-33 (b) as we have outlined, however, we do not agree with AUMC's interpretation.

if, as here, there is only a single named defendant at trial, former OCGA § 51-12-33 (b) makes clear that it is inapplicable. See also *Alston & Bird*, 312 Ga. at 355 (2); *Zaldivar,* 297 Ga. at 600 (1), n. 7; *Carmichael I,* 362 Ga. App. at 71-72 (3).

Given the precedent set out in *Zaldivar*, *Alston & Bird*, and *Carmichael I* — in which our courts addressed in some manner the number of named defendants remaining at the time of trial, rather than the number of defendants named at the filing of the case — coupled with the plain language of the statute, we conclude that the trial court correctly determined that the prior version of OCGA § 51-12-33 (b) does not apply in this case, which initially had multiple defendants but now has only one named defendant remaining. See, e.g., *Zaldivar*, 297 Ga. at 600 (1), n. 7 ("[S]ubsection (b) is . . . concerned with damages awarded in cases in which there is more than one named defendant with liability[.]").[17]

2. AUMC also contends that even if the apportionment statute does not apply, the trial court erred in finding that "there shall be no reduction of damages based upon the *jury's apportionment* of fault to any non-party." (Emphasis supplied.)

---

[17] Importantly, AUMC is not without a remedy — it is just that the remedy is not apportionment under OCGA § 51-12-33 (b). Instead, a right of contribution is the proper remedy for a sole remaining named defendant at trial in an action in which OCGA § 51-12-33 (b) does not apply. See, e.g., *Alston & Bird*, 312 Ga. at 356 (2), n. 2.

Because we have concluded in Division 1 that apportionment is not available under OCGA § 51-12-33 (b) (2005) in this single-defendant action, the trial court correctly held that no reduction of damages is permitted. See *Alston & Bird*, 312 Ga. at 356 (2) ("There is no grant of authority in the apportionment statute to reduce damages according to the percentage of fault allocated to a nonparty in a case with only one named defendant.") (footnote omitted); *Eliezer*, 369 Ga. App. at 104 (concluding that "if [former OCGA § 51-12-33 (b)] does not apply in a given case, there is no grant of authority in the apportionment statute to reduce damages according to the percentage of fault allocated to a nonparty") (citation and punctuation omitted). Accordingly, we vacate that portion of the trial court's order that provides for the "jury's apportionment of fault to any non-party" because apportionment pursuant to former OCGA § 51-12-33 (b)[18] is unavailable.

*Judgment affirmed in part and vacated in part. Barnes, P. J., Miller, P. J., Doyle, P. J., and Markle, J., concur. McFadden, P. J., and Watkins, J., concur fully and*

---

[18] We note that OCGA § 51-12-33 (c) directs, "[i]n *assessing* percentages of fault, the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit." (Emphasis supplied.)

*specially. Land and Padgett, JJ., concur in judgment only. Mercier, C. J., Dillard, P. J.,*

*and Rickman, Brown, and Pipkin, JJ., dissent. Gobeil, J., dissents separately.*

# In the Court of Appeals of Georgia

A24A1027. AU MEDICAL CENTER, INC. v. DALE.

MCFADDEN, Presiding Judge, concurring fully and specially.

I concur fully in the majority opinion. For the reasons ably explained by the majority, I agree that our conclusion in *Carmichael I* was correct. Moreover, as binding precedent, it should not be reversed without consideration of stare decisis.

I write separately to address the dissent's assertion that our "Supreme Court's statement in a footnote that whether OCGA § 51-12-33 (b) (2005) would have applied to the facts of *Carmichael I* remains an 'open question'" is an implicit disapproval of our construction of "brought" in that statute. I don't agree with that reading of our Supreme Court's opinion in *Carmichael II*. More fundamentally, I think it would be

inappropriate for this court to adopt a practice of reading implicit disapproval of our opinions into opinions of our Supreme Court.

As the majority explains, in *Carmichael I* we construed "brought" in OCGA § 51-12-33 (b) to be used in the sense of "brought to trial." *Ga. CVS Pharmacy v. Carmichael*, 362 Ga. App. 59, 72 (3) (865 SE2d 559) (570) (2021) ("*Carmichael I*"), aff'd 316 Ga. 718 (890 SE2d 209) (2023) ("*Carmichael II*"). Our Supreme Court granted certiorari in *Carmichael II*, reviewing *Carmichael I* along with two other cases. That Court reversed, vacated, and remanded the two cases considered along with *Carmichael I*, but affirmed *Carmichael I* on other grounds. *Carmichael II*, 316 Ga. at 719.

As to the use of "brought," the *Carmichael II* court wrote in footnote 16,

> Because of our holding here, we need not reach the issue of whether apportionment to a nonparty would even have been permitted under the version of OCGA § 51-12-33 (b) in effect at the time of trial, which was limited in application to cases "[w]here an action [was] brought against more than one person for injury to person or property." OCGA § 51-12-33 (b) (2019); see *Alston & Bird, LLP v. Hatcher Mgmt. Holdings, LLC*, 312 Ga. 350, 351 (862 SE2d 295) (2021) (prior version of OCGA § 51-12-33 (b) not applicable in single-defendant lawsuits). Here, although more than one defendant was initially named, only one

> defendant remained at the time of trial; whether OCGA § 51-12-33 (b)
> *would have applied under these circumstances remains an open question.*

*Carmichael II*, 316 Ga. at 740 (III) n. 16 (emphasis supplied). By contrast, in the following footnote, the *Carmichael II* court expressly "disapprove[d] of language" in a different opinion of this court about a different issue. Id. at 742 (IV) n. 17.

We routinely cite opinions that have been reversed on other grounds as good authority for propositions that have not been reversed. I see no reason to do otherwise with an opinion that has been affirmed on other grounds.

Moreover, because *Carmichael II* affirmed *Carmichael I*, there was no opinion on remittitur, no vacation of our opinion, and no adoption of their opinion as our own. *Carmichael I* remains good law and binding precedent.

I read the "open question" language in *Carmichael II* to suggest an inclination on the part of at least some of the justices to grant certiorari on the meaning of "brought" in OCGA § 51-12-33 (b), as is their prerogative. But they did not go further. Nothing in *Carmichael II* is contrary to or critical of our interpretation of OCGA § 51-12-33 (b).

So this court erred (with my concurrence) in holding that, in *Carmichael II*, our Supreme Court "disapproved of our reasoning in *Carmichael [I]*." *Southern Oil Refinery v. Price*, 372 Ga. App. 427, 430 (2) (903 SE2d 693) (2024).

More fundamentally, while it would be appropriate for us reconsider one of our decisions in light of substantive concerns raised in a Supreme Court opinion, reacting to implicit, unspecified, unexplained disapproval is incompatible with our constitutional role. "The decisions of the Supreme Court shall bind all other courts as precedents." Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI. "The decisions of the Court of Appeals insofar as not in conflict with those of the Supreme Court shall bind all courts except the Supreme Court as precedents." Ga. Const. of 1983, Art. VI, Sec. V, Par. III. The Court of Appeals is authorized to overrule its prior decisions only upon consideration en banc. See OCGA § 15-3-1 (d); Court of Appeals Rule 33.3. So while our Supreme Court is not bound by its own precedent and so may depart from its prior opinions without overruling them, "the Court of Appeals [is] obligated to continue to rely on the older precedent from [the Court of Appeals] until such time as the older law [is] properly overruled by that court or reversed or overruled by [the

4

Supreme] Court." *White v. State*, 305 Ga. 111, 121 (3) (823 SE2d 794) (2019) (emphasis omitted).

That means that the precedential status of a decision of this court is binary in a way that the precedential status of a decision of our Supreme Court is not. A decision of our Supreme Court can become overshadowed by inconsistent subsequent opinions by that court. But a decision of this court is either binding precedent or it is not. As noted above, *Carmichael I* has not been reversed or overruled by the Supreme Court. It remains binding precedent.

Having taken this case en banc, we are authorized to reconsider *Carmichael I*. But before we reverse it, we must give due consideration to stare decisis, something the dissent has not done.

I am authorized to state that Judge Watkins joins this full and special concurrence.

# In the Court of Appeals of Georgia

A24A1027. AU MEDICAL CENTER, INC. v. DORTHY DALE,
AS EXECUTOR OF THE ESTATE OF JOHN DALE.

PIPKIN, Judge, dissenting.

Because I disagree with both the disapproval of *Southern Oil Refinery v. Price*, 372 Ga. App. 427 (1) (903 SE2d 693) (2024), and the majority opinion's interpretation of OCGA § 51-12-33 (b) (2005), I must respectfully dissent.

I first turn to the disapproval of some of the language in our *Southern Oil* decision. Contrary to the stance of the majority opinion, Division 3 of *Ga. CVS Pharmacy v. Carmichael*, 362 Ga. App. 59, 69-72 (3) (865 SE2d 559) (2021) ("*Carmichael I*") is no longer binding precedent as the Supreme Court of Georgia has

disapproved of the legal reasoning used by this Court in affirming the jury's verdict. See *Ga. CVS Pharmacy v. Carmichael,* 316 Ga. 718, 736-740 (III) (890 SE2d 209) (2023) ("*Carmichael II*"). In *Carmichael II*, the Supreme Court of Georgia stated that this Court's "attempt to rationalize the [jury's] verdict" in *Carmichael I* was "flawed." See *Carmichael II*, 316 Ga. at 739 (3). Then, at the very end of Division 3 of the opinion, our Supreme Court included footnote 16, which states as follows:

> Because of our holding here, we need not reach the issue of whether apportionment to a nonparty would even have been permitted under the version of OCGA § 51-12-33 (b) in effect at the time of trial, which was limited in application to cases "[w]here an action [was] brought against more than one person for injury to person or property." OCGA § 51-12-33 (b) (2019); see *Alston & Bird, LLP v. Hatcher Mgmt. Holdings, LLC*, 312 Ga. 350, 351 (862 SE2d 295) (2021) (prior version of OCGA § 51-12-33 (b) not applicable in single-defendant lawsuits). Here, although more than one defendant was initially named, only one defendant remained at the time of trial; *whether OCGA § 51-12-33 (b) would have applied under these circumstances remains an open question.*

(Emphasis supplied.) Id. at 740 (3). The Supreme Court's statement that whether OCGA § 51-12-33 (b) (2005) would have applied to the facts of *Carmichael I* remains an "open question," is an implicit disapproval of the harmless error language from *Carmichael I*. Indeed, it is difficult to envision how our harmless error analysis remains

2

at all relevant where the Supreme Court of Georgia has said that the issue is an "open question."

More importantly, there is no need to address *Southern Oil* in order to resolve the issue present here. As the majority opinion acknowledges, the purpose of this opinion is to address a "question that has gone conspicuously unanswered," in that neither this Court nor the Supreme Court of Georgia have ever interpreted the meaning of the word "brought" in the relevant statute. Indeed, the survey of cases collected in the majority opinion are of no assistance to the analysis required here. These decisions either do not address the issue presented in this case[1] or interpret a former version of the statute that is inapplicable because it did not provide for non-party fault.[2] As such, the meaning of the word "brought" within the statute is really

---

[1] See *Southern Oil*, 372 Ga. App. 427 (1) (specifically leaving unaddressed the meaning of "brought" in OCGA § 51-12-33 (b) (2005)); *Eliezer v. Mosley*, 369 Ga. App. 102 (891 SE2d 555) (2023) (addressing whether OCGA § 51-12-33 (b) (2005) applied to cases with multiple named defendants whose fault was indivisible). See also *Zaldivar v. Prickett*, 297 Ga. 589 (774 SE2d 688) (2015) (interpreting the meaning and application of OCGA § 51–12–33 (c) (2005)).

[2] See *Schriever v. Maddox*, 259 Ga. App. 558 (578 SE2d 210) (2003) (interpreting OCGA § 51-12-33 (1983)).

an issue of first impression. Consequently, I see no reason to rely on any of this prior case law, let alone disapprove of any language regarding these cases.

Turning to the substantive arguments on appeal, the parties and the majority opinion spend much of their time focusing either on the word "brought" by itself or the phrase "is brought" within the first portion of OCGA § 51-12-33 (b) (2005). In so doing, the majority opinion's statutory interpretation of OCGA § 51-12-33 (b) (2005) is needlessly tortured. A statute must "be read according to its natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending its operation." (Punctuation and footnotes omitted; emphasis supplied.) *Najarian Capital v. Fed. Nat. Mtg. Assn.*, 354 Ga. App. 159, 162 (1) (840 SE2d 600) (2020). In other words, when interpreting a statute, we cannot hyperfocus on any specific word. Instead, "we must view the statutory text in the context in which it appears," (citation omitted.) *Symphony Med. v. FFD GA Holdings*, 370 Ga. App. 66, 69 (3) (893 SE2d 810) (2023), and be "mindful that a phrase found in a statute must be gauged by the words surrounding it," (citation and punctuation omitted.) *Wilson v. Inthachak*, 372 Ga. App. 341, 346-347 (1) (a) (904

SE2d 414) (2024). See also *Anderson v. Southeastern Fidelity Ins. Co.*, 251 Ga. 556 (307 SE2d 499) (1983) ("Words, like people, are judged by the company they keep.").

Applying those principles to the statutory language at issue, the statute says, "[w]here *an action is brought against* more than one person for injury to person or property, . . ." (Emphasis supplied.) OCGA § 51-12-33 (b) (2005). Reading this text in its most natural and reasonable way, an *action is brought against* a person in a civil case when a complaint is filed,[3] not when a case is brought before a jury. The statutory language is simply that clear. Further, "[t]o hold otherwise would be to sanction gamesmanship," *Barnett v. State*, 300 Ga. 551, 553 (2) (796 SE2d 653) (2017) (citation omitted), as it would allow plaintiffs the ability to dictate whether or not a defendant can seek apportionment simply based upon the number of defendants the plaintiff decides to take to trial.

Because Appellees filed a complaint against numerous defendants, I would conclude that apportionment was available under OCGA § 51-12-33 (b) (2005), and I would reverse the judgment of the trial court. Accordingly, I respectfully dissent.

---

[3] This also holds true for amended complaints adding party defendants to a cause of action because, as soon as an additional defendant is added as a party, the action is brought against that new defendant.

I am authorized to state that Chief Judge Mercier, Presiding Judge Dillard, Judge Rickman, and Judge Brown join this dissent.

# In the Court of Appeals of Georgia

A24A1027. AU MEDICAL CENTER, INC. v. DOROTHY DALE,
AS EXECUTOR OF THE ESTATE OF JOHN DALE.

GOBEIL, Judge, dissenting.

I agree with Judge Pipkin's dissent that, after applying the traditional canons of statutory interpretation and reading the text of OCGA § 51-12-33 (b) in the most natural way, an action is brought against a person in a civil case when a complaint is filed, not when a case is brought to trial. However, I write separately because I do not agree with everything included in his dissent.